248 So.2d 629 (1971)
Margaret Fleming FORD, Plaintiff-Appellee,
v.
Walter H. BROUSSARD, Defendant-Appellant.
No. 3425.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1971.
Marcantel & Cassidy by Charles R. Cassidy, Jennings, for defendant-appellant.
Stephen P. Coco, Jennings, for plaintiff-appellee.
FRUGE, Judge.
Mrs. Margaret Fleming Ford, plaintiff-appellee, brought this suit against Walter H. Broussard, defendant-appellant, to rescind a contract of sale of a house and lot for a redhibitory vice. The trial court granted rescission of the contract ordering defendant to repay $13,500, the contract price of the house, and $194.23, the cost of cleaning and replacing a rug and pad. The trial court also awarded $500.00 for attorney's fees. Defendant has appealed and plaintiff has answered requesting an additional award of $193 for the loan closing costs, and an increase in attorney's fees from $500 to $1500. We affirm.
On October 4, 1967, Mrs. Ford purchased a three bedroom frame house and lot located at 823 Third Street, in the City *630 of Jennings, Louisiana, from Mr. Broussard for the sum of $13,500. On April 12, 1969, after a rainfall of approximately 5.6 inches, a large part of Mrs. Ford's home was flooded. The rugs in the home became thoroughly saturated with water and had to be removed to dry. Upon removing the rug, Mrs. Ford discovered a large crack or separation in the slab or foundation, beginning at the front door entrance of the home and running entirely through the living room, up through the hall and ending at the rear or south end of the home. This separation varied in its width, but was approximately one-half inch wide or more and the surface along the separation at different points was uneven. At one time, tile had been laid as a flooring in the house. Now the tile was completely broken all along the separation. The house flooded again that summer and a third time in October, 1969.
The house was built by Mr. Broussard during 1945-1947. He occupied the house until 1967, when he arranged to buy another.
Mrs. Ford heard that the house might be for sale and made an inquiry to Mr. Broussard about the house. Mr. Broussard, though not intending to sell the house before being contacted, responded to the inquiry in the affirmative. At that time, however, he was not ready to show the house. He did not permit Mrs. Ford to see the house until approximately a month after the request. Mr. Broussard never showed the house himself nor did he ever accompany Mrs. Ford to the home. He did, however, make it available for her inspection. In his discussion with Mrs. Ford about the house, Mr. Broussard represented the house to be a good, comfortable one with only one defect. That defect was a light switch which controlled the light in the carport. Mrs. Ford asked about the drainage around the house, and whether or not the house was in any danger of flooding. She testified that Mr. Broussard said that the house had flooded one time before, and explained to her that the flooding had occurred during an abnormal rainfall of 11 inches and was caused by poor drainage in the ditches in front of the house. He further told her that the flooding had only occurred once and would not happen again because an inadequate culvert had been replaced with a larger culvert to improve drainage.
Mr. Broussard admitted that he had not told Mrs. Ford about the separation of the slab and the flooding. He had only told her that the house was a good, comfortable house with only one defect, the carport light switch which was mislocated. Mr. Broussard admitted that the house had flooded at least five times during the time he occupied the house. When the first flooding occurred, the defendant had a rug on the floor which became saturated. This rug was removed after that first flooding and was never replaced until shortly before the house was sold to Mrs. Ford. Defendant, during this time, was also well aware of the existence of the seam in the slab. He testified that the seam had existed for some time and that he knew of the seam at the time he sold the house and did not inform Mrs. Ford about it.
The Civil Code Article 2520 states as follows:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
It is true, of course, that it is not every defect that will be a sufficient basis to rescind a contract. And a buyer may not get a rescission when the defect is one that is discoverable by a simple inspection at the time of the sale by a reasonably prudent buyer acting under similar circumstances. Here Mrs. Ford made such an inspection and did not discover the defects which *631 form the basis of this suit. When she inspected the house, the separation of the slab was thoroughly concealed by the rugs. No one had even suggested that she had any reason to suspect that such a condition existed or that she should have removed the rug to inspect the slab. The only place the separation was visible was in a closet at the rear of the house, and at the time, Mrs. Ford saw the house, that area of the closet was covered by two space heaters.
More importantly, Mrs. Ford had no reason to suspect that this house was susceptible to frequent flooding or that anyone would sell her a house knowing that it flooded easily. This simply was not a defect which could be discovered by a simple inspection. We are of the opinion as was the trial judge, that this is such a defect which renders the house so inconvenient and imperfect, that it must be supposed the buyer would not have purchased the house had she known of the vice. Mrs. Ford is entitled to reimbursement for the money spent in cleaning and replacing the rug soiled by the flooding and for attorney fees. Civil Code Article 2545 states:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, including reasonable attorney fees, is answerable to the buyer in damages."
We are of the opinion that $500 for attorney fees is reasonable in this particular case and reject appellee's request for an increase in attorney fees and as well reject appellee's request for the loan closing cost as we do not find sufficient evidence to support that request as an element of damages.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are to be assessed against the defendant-appellant.
Affirmed.