426 So.2d 1360 (1983)
Jimmy Allen SMITH, et al., Plaintiffs-Appellants,
v.
H.J. LANDRENEAU BUILDING CONTRACTOR, INC., Defendant-Appellee.
No. 82-373.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
*1361 Pucheu, Pucheu & Pucheu, Jacque B. Pucheu, Eunice, for plaintiffs-appellants.
George Privat, Lafayette, for defendant-appellee.
Before GUIDRY, CUTRER and LABORDE, JJ.
GUIDRY, Judge.
In this action, the purchasers of certain real property seek reduction of the purchase price, damages and attorney's fees from the vendor-builder for an alleged redhibitory defect, i.e., susceptibility of the premises to flooding. The vendor-builder filed a peremptory *1362 exception of prescription. After trial on the merits, the trial judge rendered judgment sustaining defendant's exception of prescription and dismissed plaintiffs' suit. Plaintiffs appeal.
The primary issue is whether the trial judge erred in sustaining the defendant's exception of prescription. If this question is resolved in the affirmative, we must then determine whether the plaintiffs have proved their case and the extent of the award, if any.
The defendant, H.J. Landreneau Building Contractor, Inc. (hereafter Landreneau) is a land developer and contractor, who buys property, constructs homes thereon, and then resells the improved property. On October 29, 1976, Landreneau bought a lot of ground located in the Suzanne Guillory Addition "B" to the City of Eunice, Louisiana. Landreneau completed construction of a house on this property sometime prior to March or April of 1977. This is the house and lot ultimately sold to plaintiffs. In May of 1977, this property and an adjacent lot, also owned by Landreneau, flooded. Water entered the house on the adjacent lot which is situated about 170 feet from the bank of a coulee but not the house on the lot in question which is situated about 225 feet from the coulee. Landreneau had the property listed with a realtor for six months but was unable to find a purchaser.
Judy Arnaud Smith, one of the plaintiffs, her mother and her sister worked at the Pelican Restaurant where Howard Landreneau, the defendant's president, went twice a day to drink coffee. They had known each other for many years. In late October, 1977, Mrs. Smith advised Howard Landreneau that she and her husband, Jimmy Smith, were interested in purchasing the property. Subsequently, Mrs. Smith was informed by her stepfather that he had seen some carpeting drying in the yard of the adjacent lot after the property had flooded in March or April of 1977. Mrs. Smith, her mother and her sister discussed this matter and the property in general on several occasions with Mr. Landreneau at the Pelican Restaurant. The substance of Mr. Landreneau's response to Mrs. Smith's inquiries about flooding was that the house (as opposed to the lot) had not flooded in the past and would not flood in the future because the coulee had been cleaned out. On November 7, 1977, Landreneau sold the property to the Smiths for the sum of $48,500.00. On May 30, 1979, the property flooded. Sixteen inches of water entered the home causing extensive damage. This suit was filed on May 9, 1980. The property flooded again in April of 1980.
Defendant pled the prescription of one year to the redhibitory action. Articles of our Civil Code pertinent to the issue presented provide as follows:
"Art. 2534. Prescription of redhibitory action; exception and suspension. The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.

Nor where the seller, not being domiciliated in the State, shall have absented himself before the expiration of the year following the sale; in which case the prescription remains suspended during his absence.
C.C. arts. 1832, 2498, 2520, 2535 et seq., 2545, 2546.
(Emphasis ours)
Art. 2545. Liability of seller for concealment of vice. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages. (Amended by Acts 1968, No. 84, § 1.)

C.C. arts. 1763, 1832, 1847, 1934 et seq., 2506 et seq., 2521, 2531, 2534 et seq., 2544, 2546, 2547, 2551.
LSA-R.S. 51:1401 to 51:1418.
(Emphasis ours) *1363 Art. 2546. Prescription of redhibitory action when seller in bad faith. In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.
This discovery is not to be presumed; it must be proved by the seller.
C.C. arts. 2498, 2534, 2545."
Also pertinent is Civil Code Article 2522 which provides:
"Art. 2522. Latent defects made known to buyer. The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received.
C.C. arts. 2276, 2277, 2503, 2521."
These provisions contemplate three distinct situations. Under Article 2534, if the seller has no knowledge of the latent defect, the buyer's action in redhibition prescribes in one year from the date of the sale. Under Articles 2545 and 2546 and stated as an exception to Article 2534, if the seller has knowledge of the latent defect but omits to declare it, the buyer's action in redhibition prescribes in one year from the discovery of the vice. Under Article 2522, if the seller has knowledge of the latent defect and declares it to the buyer, there is no prescriptive period because the buyer has no cause of action in redhibition.
The Smiths instituted this suit in redhibition more than one year after the sale of the dwelling. Therefore, proof of the seller's knowledge of the vice and his neglect in declaring it to the buyers is essential if this action is to be maintained. If the buyer succeeds in this proof, it is then up to the seller to show that more than one year had elapsed since their discovery of the vice. The trial judge sustained the one year prescription under Article 2534. In his written reasons for judgment, he recognized that under our jurisprudence the builder or the manufacturer is presumed to know of the vice in the article he constructs or manufactures. He, nonetheless, stated:
"The extended prescription arising from a seller's failure to disclose a defect suggests a penal element. Such a result should be based on actuality, that is, what the seller actually knew, not what he is presumed to have known."
This conclusion is contrary to the law and the jurisprudence of this state. The Supreme Court addressed this same issue in Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952) and stated 57 So.2d at page 667:
".... Since one year elapsed, for this action to be maintained proof of the knowledge of the vice on the part of the seller is essential. In both Article 2534 and Article 2545 significance is given to the fact of knowledge of the seller. Under Article 2534 the limitation is not applicable `where the seller had knowledge of the vice and neglected to declare it to the purchaser', and under Article 2545 the seller is answerable in damages when he `knows the vice of the thing he sells and omits to declare it'. The rules for proving this knowledge would be the same under both articles.
Under the French law as well as under the jurisprudence of this state the artisan, craftsman, builder, or manufacturer is presumed to know of the vice or defect in the article he constructs, manufactures, or builds.
(discussion of authorities omitted)
Under these authorities, we hold in the instant case that the vendors of the brick dwelling were presumed to have had knowledge of the vice of the dwelling or residence sold, since it was built and constructed by the defendant contractor, Mawby. Since, under this conclusion, the vendors had knowledge of the vice in the thing sold and since they failed to declare it to the purchasers, it was not necessary for the plaintiffs to institute the present action within one year from the date of the sale."
Because Landreneau is a builder-vendor of the dwelling, his knowledge is presumed *1364 and the prescriptive period of Article 2534 is not applicable.
The trial judge apparently found Article 2522 also inapplicable. In resolving the uncertainty and inexactness as to what the defendant told the plaintiffs regarding the flooding of the residence, he found as a fact that the extent of the seller's expressions to the buyers in the negotiations was to predict or opine that the house was not susceptible to flooding because of the cleaning out of the coulee. This is clearly not a declaration of the defect but rather a denial that the defect exists.
Because the trial judge found the prescriptive period of Article 2534 applicable, he did not reach the question of whether the action has prescribed under Article 2546. In considering the applicability of Article 2546, the burden is on the defendant to show that more than one year has elapsed since the discovery of the vice. Tuminello v. Mawby, supra. The house flooded for the first time on May 30, 1979. There is no evidence that the Smiths discovered the defect prior to this time. The suit was filed on May 9, 1980 within one year of the discovery of the vice.
We, therefore, conclude that the trial court erred in sustaining the plea of prescription of one year urged by the defendant and now determine whether the plaintiffs have proved their case and the extent of the award, if any.
"In a redhibitory action the plaintiff need only prove that the product contained a hidden vice at the time of the sale, not apparent by ordinary inspection, which subsequently renders the thing unfit for the use intended or that its use became so inconvenient or imperfect that it must be supposed that the purchaser would never have purchased the product had he known of the vice or defects." (citations omitted)
Moreno's Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660, 662 (La.1975). After a careful review of the record, we conclude that the Smiths' house is susceptible to flooding. The house is located in a flood zone as documented by a city map. From the time the house was constructed in 1977, until this case was tried in 1981, the property flooded three times (although water entered the house only twice). The susceptibility of a house to flooding is a redhibitory defect. Ford v. Broussard, 248 So.2d 629 (La.App. 3rd Cir.1971); Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir.1977); Cox v. Moore, 367 So.2d 424 (La.App. 2d Cir.1979). The evidence also shows that the defect existed at the time of the sale.
We also conclude that the defect was a non-apparent, latent defect not discoverable by a simple inspection. The susceptibility of a house to flooding is not made apparent by the fact that an adjacent house previously flooded on one occasion. In Ford v. Broussard, supra, we concluded that the susceptibility of a house to flooding was a non-apparent defect even though the buyers were aware that the house purchased had previously flooded on one occasion. This house was constructed only six months before the Smiths purchased it. Although the lot had flooded on one occasion prior to sale, water had not entered the house. There was nothing to indicate from a simple inspection that the house was susceptible to flooding. We therefore conclude that plaintiffs have proved their case by a preponderance of the evidence.
As aforestated, the builder is presumed to know of the vice in the article he constructs. The Smiths are therefore entitled to a reduction in the original purchase price of their home under Civil Code Article 2541, as well as damages and attorney's fees under Civil Code Article 2545.
Mr. Moreau, who qualified as an expert appraiser, testified that the market value of a house depreciates from 10 to 75 percent due to susceptibility to flooding. He was unable to pinpoint the percentage of depreciation of this particular house. In this regard, Mr. Moreau testified as follows:

*1365 "Q. Could you estimate the percent?

A. Mr. Pucheu, it's very hard to do. To determine the amount of depreciation that would have to be used on a house that floods I would think that it would determineyou'd have to consider the amount of flooding and the times that a property does flood. In the information that I have gotten through the years you could depreciate a house that is in a flood zone anywheres from 10 to 75 percent.
Q. It depends on the frequency of the flood?
A. Yes, sir, and the amount
Q. and the amount of flooding, I guess?
A. And the amount of flooding, right.
Q. From 10 to 75 percent. In this situation, the house having flooded twice since 1977, can you aid the court or me or opposing counsel in what you would depreciate the value of this house?
A. No, sir.
Q. You cannot?
A. No, sir.
Q. It could be anywhere from 10 to 75 percent?
A. Yes, sir."
This was the only evidence presented by plaintiffs to establish the amount by which the purchase price should be reduced. Plaintiffs have the burden of proving damages. Considering the above, we conclude that it is just to approximate the percentage of depreciation at 10%. Since the Smiths paid $48,500.00 for the house, we will award $4,850.00 as a reduction in the purchase price.
The plaintiffs attached to their original petition an itemized list of the damages sustained to their personal property in the flood. In addition, plaintiffs introduced into evidence a handwritten itemized list entitled "Loss Due to Flood". This list was prepared earlier by Mrs. Smith with the assistance of a notary public for income tax purposes. There is a discrepancy of almost $3,000.00 between the amount totaled on the two lists. At the time this suit was filed almost all of the items listed thereon had been discarded. There is no evidence indicating the actual age, cost, condition or value of the items listed other than the testimony of Mrs. Smith. She testified that she was forced to rely on her memory to establish the cost and value of the items because all of her receipts and papers were lost in the flood. The estimated value of many of the items listed, although purchased one or two years before the flood, is the same as the estimated cost. Although the value was depreciated on some of the items, Mrs. Smith was unable to explain any basis for the depreciable factor used. Furthermore, Mrs. Smith admitted that some of these items were probably worth less than the amount stated on her lists and that several of the items are still in use. As aforestated, the plaintiffs have the burden of establishing their loss to a reasonable certainty and by a preponderance of the evidence. Plaintiffs ask this court to award $15,272.85 for property damage. After considering all of the above and after meticulous scrutiny, we feel $7,500.00 will fairly compensate plaintiffs for the property damage which they sustained.
Plaintiffs have requested attorney's fees in the amount of $5,000.00. The case was tried in one day. After a careful examination of the record, we conclude that the sum of $2,500.00 will reasonably compensate plaintiffs' attorney for their services both at the trial level and on appeal.
For the reasons assigned, the judgment appealed from is reversed. It is now ordered, adjudged and decreed that there be judgment in favor of Judy Arnaud Smith and Jimmy Allen Smith and against H.J. Landreneau Building Contractor, Inc. in the amount of $14,850.00, with legal interest from date of judicial demand until paid. H.J. Landreneau Building Contractor, Inc. is to pay all costs at the trial level and on appeal.
REVERSED AND RENDERED.