**In re FORD MOTOR CO. BRONCO II PRODUCT LIABILITY LITIGATION.**

**No. Civ.A. MDL 991.**

United States District Court,
E.D. Louisiana.

Sept. 10, 1997.

Stephen B. Murray, Murray Law Firm, New Orleans, LA, Michael H. Ellis, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, T. Roe Frazer, II, Richard A. Freese, Langston, Frazer, Sweet & Freese P.A., Jackson, MS, Daniel E. Becnel, Reserve, LA, Patrick W. Pendley, Plaquemines, LA, Irwin B. Levin, Cohen & Malad, Indianapolis, IN, for Plaintiffs.

Colvin Gamble Norwood, Jr., McGlinchey, Safford & Lang, New Orleans, LA, John Beisner, Brian D. Boyle, O'Melveny & Myers, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

SEAR, Chief Judge.

*Background*

Between June 23 and August 26, 1993, six consumer class actions were filed asserting claims that 1984–1990 model year Ford Bronco II vehicles have design defects causing an unreasonable propensity to roll over. In February 1994, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated and transferred five pending actions to this district, designated the core actions.[1] Two other actions presently are consolidated as "tag-alongs."[2]

The actions, although separate, contain virtually identical allegations. On July 25, 1994, plaintiffs filed a Consolidated Amended Class Action Complaint which, on September 26, 1995, was superseded by a Second Amended Class Action Complaint ("Second Complaint" or "Complaint").[3] The Second Complaint named 120 plaintiffs pursuant to the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(3)(C).[4] The claims asserted included alleged violation of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.,* and state law claims for fraud, breach of express warranty, breach of implied warranty, breach of contract, and redhibition.[5] In the Second Complaint, plaintiffs sought a variety of damages and equitable relief, including repayment of the Bronco II purchase price, compensation for diminution in value of the Bronco II and/or an injunction requiring Ford to provide public notice that the Bronco II contains a latent, dangerous defect or to recall and retrofit all Bronco IIs.[6] Plaintiffs also sought punitive damages and attorney fees to the extent permitted by law.[7] Through motion practice, plaintiffs' legal theories and the form of relief sought have been narrowed.[8] Presently, only two of plaintiffs' legal theories—fraudulent concealment and breach of implied warranty/redhibition—remain viable, and the form of relief sought consists primarily of the cost to repair the alleged defect.[9] In addition, on February 27, 1997, I denied plaintiffs' motion for certification of a class.[10] Accordingly, what is presently pending before me are the claims of approximately 120 Bronco II owners from approximately nine (9) states.

Ford now moves for summary judgment dismissing the fraudulent concealment and redhibition claims of all Louisiana plaintiffs[11]

---

1. These cases include *Bates, et al v. Ford Motor Co.,* 94–0537 (filed in Louisiana state court and removed to the U.S. Dist. Court for the Middle District of Louisiana); *Lewis, et al. v. Ford Motor Co.,* 94–0538 (filed in U.S. Dist. Court for the Southern District of Mississippi); *Armistead, et al. v. Ford Motor Co.,* 94–0539 (filed in the U.S. Dist. Court for the Western District of North Carolina); *Luis, et al. v. Ford Motor Co.,* 94–0540 (filed in the U.S. District Court for the Southern District of Florida); and *Vitrano, et al. v. Ford Motor Co.,* 94–2537 (filed in the U.S. Dist. Court for the Eastern District of Louisiana).

2. These cases are *Washington, et al. v. Ford Motor Co.,* 95–1676 (E.D.La.) and *Kloster v. Ford Motor Co.,* 95–1966 (E.D.Mo.). Another tag-along, *West v. Ford Motor Co.,* 95–2067 (S.D.Ind.), was dismissed on joint motion on 8/15/95 and another tag-along, *Canzoneri v. Ford Motor Co.,* 96–1435 (E.D.La.), was severed as a personal injury, as opposed to a consumer action.

3. Record Doc. No. 241.

4. *Id.*

5. The Second Amended Complaint brought into play the laws of Indiana, Minnesota, New York, Texas and West Virginia, in addition to the laws of Louisiana, North Carolina, Mississippi, and Florida.

6. Record Doc. No. 241.

7. *Id.*

8. *See* Record Doc. Nos. 221, 239 and 361.

9. *See* Record Doc. No. 361 (Memorandum and Order dismissing all named plaintiffs' claims for breach of contract, breach of express warranty, and fraud premised on affirmative misrepresentations and recognizing form of relief sought as cost to repair alleged defect).

10. Record Doc. No. 354.

11. According to defendant's listing, which plaintiffs do not contest, sixty-nine (69) of the named plaintiffs purchased their Bronco II vehicles in Louisiana. *See* Defendant's Statement of Undisputed Material Facts; Exhibits A and B to Defen-

on grounds that (1) the claims of all Louisiana plaintiffs who purchased their Bronco II vehicles before June 23, 1992 are barred by prescription; (2) the claims of all Louisiana plaintiffs who purchased their Bronco II vehicles after June 23, 1992 are substantively precluded because information concerning the alleged defect was available to them at the time of purchase; and (3) the fraudulent concealment claims fail for the additional reason that plaintiffs cannot establish that Ford owed them a duty to disclose the alleged defect.

Certain named plaintiffs have filed a memorandum in opposition to defendant's motion.[12] However, those plaintiffs who have filed an opposition memorandum have not filed any supporting documentation or affidavits [13] or even a statement of contested material facts as required by Local Rule 2.09. Nor does it appear from plaintiffs' opposing memorandum that plaintiffs contest the facts as stated in defendant's Statement of Undisputed Material Facts. Rather, it seems that plaintiffs have merely relied on inferences that they argue may be drawn from those facts. Accordingly, in referring to the underlying facts, I rely largely on defendant's statement of undisputed material facts,[14] as well as the record and the documentation submitted by defendants in connection with the motion for summary judgment.

The Louisiana plaintiffs' fraudulent concealment and redhibition claims are dependent on the allegation that Bronco IIs uniformly suffer from a latent defect because they have "a substantially increased and unacceptable risk of rollover under normal operation." [15] Specifically, plaintiffs' defect theory assails the Bronco II's alleged "high center of gravity" and "narrow and short wheelbase." [16] The common factual backdrop relied on by defendant in connection with its motion is the presence, in the 1980s and early 1990s, of extensive media coverage concerning the rollover problems of sport-utility vehicles in general and Bronco IIs in particular. Additionally, defendant points to measures it took to alert consumers to the special characteristics of the Bronco II. Accordingly, it is helpful at this time to outline that information, the media coverage and the underlying events addressed in the media.[17]

The Ford Bronco II, a light sport utility vehicle, was manufactured and sold by Ford between 1983 and 1990. Criticism of the unreasonable propensity of sport utility vehicles to roll over has been leveled before the National Highway Traffic Safety Administration ("NHTSA" or "Agency") since the early 1980's.[18] To date, the Agency has declined to promulgate minimum stability standards for such vehicles, rejecting the argument that center of gravity and track width are the sole cause of rollover of sport utility vehicles.[19]

dant's Summary Judgment Motion; Defendant's Amendment to Summary Judgment Motion.

**12.** Plaintiffs' Memorandum in Opposition was filed on behalf of only forty-nine (49) Louisiana plaintiffs, as listed on the first page of that submission.

**13.** Plaintiffs state that their "complaints, discovery responses, and affidavits which will be submitted at the hearing set forth genuine issues of material fact." Opposing Memorandum at p. 2. However, the Local Rules of this district provide that, absent a request and the court's granting of a hearing, motions shall be determined on the basis of the record, including any timely filed briefs and supporting or opposing documents filed therewith. Local Rule 2.01E. Plaintiffs have not requested a hearing or oral argument, and there is no reason they could not have submitted affidavits and any other supporting documentation with their opposition memorandum.

**14.** Indeed, pursuant to Local Rule 2.10, "all material facts set forth in the statement ... served

by the moving party will be deemed admitted for purposes of the motion unless controverted as required by [Rule 2.09]." Rule 2.10E & W, Uniform Local Rules, United States District Courts for the Eastern, Middle and Western Districts of Louisiana.

**15.** Second Amended Complaint at ¶¶ 14, 21.

**16.** *Id.* at ¶ 10.

**17.** Plaintiffs do not contest the events and media coverage as set forth by defendant, but argue generally that the information was not sufficient to alert them to the problem.

**18.** *See, e.g.,* 47 Fed.Reg. 58,323 (1982) (proposing consumer information requirement with respect to all vehicles that have a "short wheelbase, a narrow track, high ground clearance [and] a high center of gravity").

**19.** *See* 59 Fed.Reg. 33,258 (1994).

Nevertheless, the Agency has consistently recognized that the relationship between stability and rollover risk is significant enough to require the dissemination of consumer information.[20]

As early as May 1984, the Agency began requiring manufacturers of utility vehicles to alert owners, through a vehicle sticker and owner's manual, to the vehicles' special handling and maneuvering characteristics and to warn owners of the danger of rollover.[21] In response, all Ford Bronco IIs have borne a warning sticker on the driver side [22] and have been accompanied by an owner's manual and supplemental safe-driving guide.[23] The warning sticker reads:

CAUTION: This multipurpose passenger vehicle or 4X4 truck has special design and equipment features for off-road use. As a result, it handles differently from an ordinary passenger car in driving conditions which may occur on streets and highways and off-road. DRIVE WITH CARE AND WEAR SAFETY BELTS AT ALL TIMES. Avoid unnecessary sharp turns or other abrupt maneuvers that could cause loss of control, possibly leading to rollover or other accidents that could result in serious injury. For instructions on how to handle this vehicle during emergency maneuvers, and for other safe driving precautions and instructions, read the Owner's Guide and Supplement.

The Owner's Guide cautions, *inter alia*, that "[a]s with other vehicles of this type, failure to operate this vehicle correctly may result in loss of control or an accident," and beginning in August 1987, referred the owner to a supplemental guide .[24] The supplemental guide, a much smaller pamphlet entitled "4–Wheeling with Ford," was provided to pur-

chasers of both 4x4 and 4x2 Bronco IIs. It specifically addresses how a sport utility vehicle like the Bronco II differs from other vehicles, including the higher and narrower chassis and shorter wheelbase.[25] Further, in several places it addresses the risk of rollover, specifically cautioning against sharp maneuvers on and off the highway and modifications that raise the vehicle's center of gravity.[26]

The investigation conducted by the Agency in the 1980's received a fair amount of media coverage, with a number of articles including specific mention or discussion of the Ford Bronco II.[27] In early 1989, when the Agency began investigating allegations concerning stability defects specific to the Ford Bronco II (and the 1984–1989 models in particular), this investigation also received attention in the national press.[28]

Media coverage concerning the Bronco II appears to have peaked in May 1989 with the publication of the June 1989 issue of Consumer Reports, which contained a scathing review of the handling of the Bronco II, focusing on the vehicle's high risk of rollover and statistics demonstrating that risk.[29] The very cover of the magazine included a picture of the Bronco II tipping up in test drives and bore the caption "HOW SAFE IS THE FORD BRONCO II?" The ten-page article discussed several utility vehicles, including the handling capabilities and risk of rollover of each of them. With respect to the Bronco II, the recommendation concluded that

[p]rudent buyers will avoid the Ford Bronco II. Its handling in our tests was poor. We don't think any vehicle should lift both wheels so far off the ground in our tests on smooth, dry pavement. The accident statistics—whether you choose to give cre-

**20.** 49 Fed.Reg. 20,016 (1984); 59 Fed.Reg. 33,-258 (1994).

**21.** 49 Fed.Reg. 20,016 (1984); 49 C.F.R. § 575.105.

**22.** Defendant's Statement of Undisputed Material Facts, ¶ 5; Defendant's Exhibit D.

**23.** Defendant's Statement of Undisputed Material Facts, ¶ 5; Defendant's Exhibits E and F.

**24.** Defendant's Exhibit E, at p. 7.

**25.** Defendant's Exhibit F at p. 3.

**26.** *Id.* at pp. 4–5, 11, 14.

**27.** *See* Defendant's Exhibit G; Defendant's Memorandum, at p. 8. n. 17.

**28.** Defendant's Exhibit H; Defendant's Memorandum at p. 9.

**29.** Defendant's Exhibit I.

dence to the Government's interpretation or to Ford's—add weight to our findings.[30]

In May 1989 and thereafter, newspapers across the country, including the Wall Street Journal and USA Today, relayed consumer Reports' criticism of the Bronco II.[31]

Media attention did not end in 1989. Although Ford stopped manufacturing and selling the Bronco II in 1990, studies of the Bronco II by various groups continued to be the focus of media attention. In early 1992, for example, both national and local publications reported the opinion of the Insurance Institute for Highway Safety ("IIHS") that two-wheel drive Bronco IIs had rollover fatality rates that were higher than the rates for all other utility vehicles.[32]

*Analysis*

A. Summary Judgment Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [33] This language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." [34] A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact.[35]

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of fact."[36] However, the movant need not support the motion with materials that negate the opponent's claim. As to issues on which the non–moving party has the burden of proof at trial, the moving party need only point to an absence of evidence to support the non–moving party's claim; the non–moving party must then designate "specific facts showing that there is a genuine issue for trial."[37]

When the moving party has carried its burden under Rule 56(c), the opponent cannot simply "rest on the allegations in [the] complaint" [38] and must present more than a metaphysical doubt about the material facts.[39] Further, a claim that additional discovery or a trial might reveal facts of which the non-moving party is currently unaware is insufficient to defeat the motion.[40] Nevertheless, the evidence of the nonmovant is to be believed and justifiable inferences from the underlying facts are drawn in his favor, and any doubts are resolved against the moving party.[41]

**30.** Consumer Reports (June 1989), at p. 402.

**31.** *See, e.g.,* Paul Ingrassia, *Magazine Gives Ford Bronco II "Avoid" Rating,* Wall St. J., May 18, 1989 (noting that "[t]he Consumer Reports' article is the second time this year that the Bronco II's safety has been questioned."); *Magazine Says Ford Bronco II Tips,* Associated Press, May 17, 1989; *Moneyline: Bronco II Stability Hit,* USA Today, May 18, 1989. Defendant's Exhibit J.

**32.** Defendant's Exhibit K.

**33.** Fed.R.Civ.P. 56(c).

**34.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**35.** *Id.*

**36.** *Id.* at 323, 106 S.Ct. at 2552–53 (citing Fed. R.Civ.P. 56(c)).

**37.** *Id.* at 324, 106 S.Ct. at 2553.

**38.** *International Shortstop, Inc. v. Rally's Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991).

**39.** *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**40.** *Woods v. Federal Home Loan Bank Bd.,* 826 F.2d 1400, 1414–15 (5th Cir.1987).

**41.** *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1356–57.

### B. Fraudulent Concealment and Redhibition Claims of Louisiana Plaintiffs Who Purchased their Bronco II Vehicles Prior to June 23, 1992

Defendant maintains that because the earliest filed constituent action in this multidistrict proceeding was instituted on June 23, 1993, the fraudulent concealment and redhibition claims of Louisiana plaintiffs who purchased their vehicles prior to June 23, 1992 are time-barred.[42]  Plaintiffs argue in opposition that their claims are not time-barred because plaintiffs were unable to discover the alleged defect prior to one year before filing suit.

■ In Louisiana, the prescriptive period for delictual actions, which include actions for fraud, is one year from the date injury or damage is sustained.  The parties do not dispute that the date of injury or damage, for purposes of the fraudulent concealment claims, is the date plaintiffs purchased their vehicles.[43]  Accordingly, the fraudulent concealment claims of all Louisiana plaintiffs who purchased their Bronco II vehicle prior to June 23, 1992 are prescribed on their face.  Likewise, the parties do not dispute that the applicable prescriptive period for plaintiffs' redhibition claims is one year from the plaintiff's discovery of the alleged defect.[44]

■ With regard to plaintiffs' fraudulent concealment claims, because the claims are prescribed on their face plaintiffs bear the burden of proving interruption or suspension of prescription.[45]  Plaintiffs invoke the equitable doctrine of "contra non valentum agere nulla currit praescriptio" ("contra non valentum") to urge that prescription was suspended until some unidentified time (but presumably within one year of the date this action was instituted).  Contra non valentum suspends prescription where the circumstances of the case fall into one of four categories,[46] only two of which—the third and fourth—are urged by plaintiffs.  Because it is an exceptional remedy recognized by Louisiana jurisprudence that is in direct contradiction to the articles in the Code, the doctrine is strictly construed.[47]

■ First, plaintiffs urge that prescription was suspended pursuant to the third category of contra non valentum because defendant's conduct prevented them from learning of the basis for their cause of action.  The third category of contra non valentum applies when the defendant has done some act effectually to lull the victim into inaction and prevent him from availing himself of his cause of action.[48]  The conduct that keeps the victim in ignorance of his claim must rise to the level of concealment, misrepresentation, fraud or ill practices before the exception will apply.[49]  Where plaintiff is able to establish such conduct, prescription is suspended until plaintiff is made aware of the truth of the matter.

■ Plaintiffs maintain that defendant withheld information about the rollover pro-

---

**42.** The majority of plaintiffs who purchased their vehicles in Louisiana did so prior to June 23, 1992.  Defendant's Statement of Undisputed Material Facts at ¶ 2. Exhibit A to defendant's Motion for Summary Judgment lists these plaintiffs, the date of purchase, and the model year of their vehicle.

**43.** La.Civ.Code art. 3492.

**44.** Pursuant to La.Civ.Code art. 2534, the date of discovery as opposed to the date of sale controls because the manufacturer is presumed to know of an alleged defect in its product.  *Beth Israel v. Bartley, Inc.,* 579 So.2d 1066, 1072 (La.App. 4th Cir.1991).  Although at the time this action was instituted, La.Civ.Code arts. 2546 and 2534 were the applicable code articles, the revision of those two articles effective January 1, 1995 merely combined the substance of the two articles into article 2534.

**45.** *Gary v. Camden Fire Ins. Co.,* 676 So.2d 553, 555 (La.1996) (citing *Lima v. Schmidt,* 595 So.2d 624 (La.1992)); *Hospital Service Dist. No. 1 of Jefferson Parish v. Alas,* 657 So.2d 1378, 1382 (La.App. 5th Cir.1995).

**46.** *Corsey v. State Dept. of Corrections,* 375 So.2d 1319, 1321–22 (La.1979).

**47.** *LaPlaque Corp. v. Chevron U.S.A., Inc.,* 638 So.2d 354, 356 (La.App. 4th Cir.1994) (citing *Corsey,* 375 So.2d 1319 (La.1979)).

**48.** *Fontenot v. ABC Ins. Co.,* 674 So.2d 960, 962 (La.1996).

**49.** *Id.*

pensity of the Bronco II from the public and investigating agencies.[50] In support, plaintiffs cite allegations in their Second Complaint concerning what defendant knew about the alleged defect during production of the Bronco II and the incomplete disclosures made by defendant. Plaintiffs offer no evidentiary support for these allegations. Instead, they ask me to take judicial notice of an Indiana case entitled *Ammerman v. Ford Motor Co.*[51] In denying Ford's motion for relief from a large jury verdict for plaintiffs who were injured in a Bronco II rollover, the judge in *Ammerman* recited facts concerning Ford's knowledge of the rollover defect, disclosures, made or withheld by Ford, and Ford's state of mind.[52]

■ I previously have declined to rely on the *Ammerman* case and have commented that it is insufficient evidentiary support for purposes of opposing a motion for summary judgment.[53] I stand by that position and decline to take judicial notice of the judge's recitation of facts in the *Ammerman* opinion. These simply are not the kind of facts that are proper for judicial notice pursuant to Federal Rule of Evidence 201; they are not generally known within this territorial jurisdiction or sufficiently indisputable that their accuracy cannot be reasonably questioned for summary judgment purposes.[54]

Plaintiffs also assert that defendant concealed the cause of action by engaging in a disinformation campaign that effectively negated the informative value of any media coverage or information imparted by Ford concerning the rollover problem. In support,

plaintiffs cite allegations in their Second Amended Complaint and refer to Ford's denials of the risk and rates of rollover of the Bronco II.[55] Some of the "denials" referred to by plaintiffs are found in articles submitted by defendant in conjunction with this summary judgment motion, but plaintiffs themselves produce no articles or other evidence in support of their contention. In any event, that Ford has made no concessions as to plaintiffs' defect allegations and has chosen to defend the safety of the Bronco II in courts of law and the media is insufficient evidence of the kind of concealment or ill practice required to trigger application of the doctrine of contra non valentum.[56] Thus, I find that plaintiffs have not carried their burden on summary judgment.

■ Finally, plaintiffs urge that their causes of action were not known or reasonably knowable by them even assuming their ignorance was not induced by defendant. This principle, for purposes of both contra non valentum and the prescription period in redhibitory actions, is known as the "discovery rule." Under the discovery rule, prescription does not commence until the date the injured party discovers or should have discovered the facts upon which his cause of action is based.[57] The principle does not apply if plaintiff's ignorance is attributable to his own willfulness or neglect.[58] In determining when the plaintiff should have known of the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction. A plaintiff will be deemed to know that which he could have learned through

**50.** *See* Opposing Memorandum at pp. 3–7.

**51.** No. 49D04–9311–CT–1305, Marion Superior Court, State of Indiana (1996)

**52.** Opposing Memorandum at p. 7.

**53.** *See* Record Doc. No. 361 at p. 9 n. 15.

**54.** Fed.R.Evid. 201(b).

**55.** Opposing Memorandum at pp. 5–6.

**56.** *See High Tech Communications v. Panasonic Co.*, 1995 WL 120154, *2, 1995 LEXIS 3760, *5 (E.D.La.1995) (Vance, J.) (denial of wrongdoing

is not an act of concealment) (citing *Texas v. Allan Construction Co.*, 851 F.2d 1526, 1532 (5th Cir.1988) and other authority); accord, *Zeigler v. Ford Motor Co.*, No. 96–60028, 99 F.3d 1134 (5th Cir. Sept.17, 1996), attached to Defendant's Memorandum in Support at Tab A(2), motion for publication pending.

**57.** *Corsey,* 375 So.2d at 1322. With respect to plaintiffs' redhibition claims, defendant, not plaintiffs, bears the burden of proving plaintiffs' discovery of the alleged defect. *See* former La. Civ.Code art. 2546; *Beth Israel v. Bartley, Inc.,* 579 So.2d 1066, 1072 (La.App. 4th Cir.1991).

**58.** *Corsey,* 375 So.2d at 1322.

reasonable diligence.[59] As one court succinctly stated,

> [i]f an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest and he fails or refuses to profit by it, if he closes his eyes to the notice spread before him and shuts his ears to oral information directly imparted to him, the law will hold him as bound by the same, and as fully notified as if he had taken thorough personal cognizance at the time of the information imparted and of the notice given.[60]

With these principles in mind, I turn to the record to determine whether plaintiffs exercised reasonable diligence to discover the alleged defect. The only evidence submitted in connection with the present motion is the documentation submitted by defendant in support of summary judgment. As already discussed at length, defendant has produced evidence of information it imparted to consumers about the vehicle, as well as extensive media coverage in the 1980's and early 1990's concerning sport-utility vehicles and the Bronco II. Defendant maintains that diligent inquiry would have enabled plaintiffs to ascertain the alleged defect. By contrast, plaintiffs baldly assert that even in the face of the visor sticker, owner's manuals and extensive media attention in widely circulated publications including USA Today, the Wall Street Journal and Consumer Reports, their ignorance of the rollover problem is not unreasonable. Indeed, plaintiffs urge, it is **"not reasonable** to expect the working class citizens who make up the plaintiffs in this action to scour the wire services for articles relating to a problem of which they were not even aware." [61]

I find that plaintiffs have failed to carry their burden of demonstrating that a genuine dispute of material fact exists on the issue of whether their ignorance of the rollover problem was reasonable. By at least May of 1989, the rollover problems associated with

utility vehicles in general and Bronco IIs in particular had been sufficiently publicized that any amount of diligence would have alerted plaintiffs to the issue. In addition, the warning sticker on the driver-side visor of plaintiffs' vehicles, the supplemental owner's guide and the publicity were sufficient to put plaintiffs on notice that would incite curiosity as to the cause of the problem. I simply am not persuaded by plaintiffs' unsupported assertions that they acted reasonably in closing their eyes to and/or failing to recognize the significance of such information.

Accordingly, for the foregoing reasons I find that the fraudulent concealment and redhibition claims of Louisiana plaintiffs who purchased their Bronco II vehicles prior to June 23, 1992 were prescribed when the first constituent action in this multidistrict proceeding was filed on June 23, 1993.

C. Fraudulent Concealment and Redhibition Claims of Louisiana Plaintiffs Who Purchased their Bronco II Vehicles After June 23, 1992

Defendant maintains that although not time-barred, the fraudulent concealment and redhibition claims of Louisiana plaintiffs who purchased their vehicles after June 23, 1992 fail substantively because, in view of the warning sticker, owner's guide and feverish press coverage of the alleged rollover defect in the 1980's, these plaintiffs cannot demonstrate that the alleged defect was unknown to them at the time of purchase. Plaintiffs argue in opposition that they have adequately proven due diligence.

Claims of fraudulent concealment generally require that plaintiff allege and prove that defendant wrongfully concealed information and that plaintiff did not have actual or constructive knowledge of the information and could not have learned of the

---

**59.** *Id.; Hospital Dist. No 1,* 657 So.2d at 1383; *LaPlaque,* 638 So.2d at 356; *Beth Israel,* 579 So.2d at 1072.

**60.** *Hospital Service Dist. No. 1,* 657 So.2d at 1383 (citing *Bory v. Knox,* 38 La.Ann. 379 (La.1886) (party's refusal to read or listen to information of

a fraud on which suit is based will not enable him to defeat prescription)).

**61.** Opposing Memorandum at pp. 7–8 (emphasis added).

information through the exercise of due diligence.[62] That there can be no concealment when plaintiff has access to the allegedly concealed information is a principle too well-settled to dispute.[63] "The naked assertion of concealment of material facts which is contradicted by published documents which expressly set forth the very facts allegedly concealed is insufficient to constitute actionable fraud." [64] Similarly, the central element underlying a claim for redhibition is that the alleged defect is latent, i.e., it could not have been discovered by a reasonably prudent buyer.[65]

Plaintiffs urge that even diligent inquiry could not have apprised them of the facts because defendant engaged in a disinformation campaign that quieted any suspicions. In support, plaintiffs point only to allegations in their Second Amended Complaint and to denials by Ford of the risk and rates of rollover of Bronco IIs.[66] Plaintiffs cannot avoid summary judgment by falling back on the allegations of their Complaint. In any event, denial of wrongdoing is not an act of concealment.[67] Also, although plaintiffs point to testimony by certain deposed plaintiffs to the effect that those plaintiffs would not have purchased their vehicles had they known of the alleged rollover defect, this does not create a genuine dispute of

material fact concerning whether it was **reasonable** for plaintiffs to not know of the defect considering the widespread attention it received prior to and during the years they purchased their vehicles.

Defendant has carried its burden on summary judgment and nothing in the record or advanced by plaintiffs indicates the presence of a genuine dispute on the issue of whether Louisiana plaintiffs who purchased their vehicles after June 23, 1992 could not, through the exercise of reasonable diligence, have learned of the allegedly concealed information about the propensity of the Bronco II to roll over. By at least May 1989, sufficient information had been disseminated by defendant (the visor warning sticker and owner's guides) and the media to excite plaintiffs' attention to stability concerns and the rollover problem. That defendant stood by its vehicle and denied the existence of a defect did not stifle or vitiate the information otherwise available to plaintiffs.[68]

Accordingly, for the foregoing reasons I find that defendant is entitled to summary judgment dismissing the fraudulent concealment [69] and redhibition claims of Louisiana plaintiffs who purchased their Bronco II vehicles after June 23, 1992.

Accordingly,

---

**62.** *See* Record Doc. No. 259 at p. 6 (citing *Landry v. Air Line Pilots Ass'n Int'l AFL—CIO*, 901 F.2d 404, 412–13 (5th Cir.1990)); *United Klans of America v. McGovern*, 621 F.2d 152, 153 (5th Cir.1980); *see also High Tech Communications*, 1995 WL 120154, *2, 1995 LEXIS 3760, *5 (E.D.La.1995) (Vance, J.).

**63.** *See, e.g.,* La.Civ.Code art.1954 (fraud not actionable where party claiming to have been defrauded could have ascertained truth without difficulty, inconvenience or special skill).

**64.** *Decker v. Massey–Ferguson, Ltd.*, 534 F.Supp. 873, 880 (S.D.N.Y.1981) (Pollock, J.).

**65.** La.Civ.Code art. 2520; *Smith v. H.J. Landreneau Building Contractor, Inc.*, 426 So.2d 1360, 1363 (La.App. 3d Cir.1983); *see also* La.Civ. Code art. 2521. Article 2521 was reworded in 1996, but the comments to the Civil Code make clear that the revision did not change the existing law but merely "combine[d] the substance of former Articles 2521 and 2522 of the Louisiana Code of 1870, to the effect that apparent defects

are not redhibitory vices." La.Civ.Code art. 2521, Revision comments (a) and (b). The comments also make clear that "knowledge," for purposes of the redhibitory action, encompasses constructive knowledge. *Id.* comment (c).

**66.** Opposing Memorandum at pp. 5–6.

**67.** *See High Tech Communications v. Panasonic Co.*, 1995 LEXIS 3760, *5 (E.D.La.1995) (Vance, J.) (citing *Texas v. Allan Construction Co.*, 851 F.2d 1526, 1532 (5th Cir.1988) and other authority); accord, *Zeigler v. Ford Motor Co.*, No. 96–60028, 99 F.3d 1134 (5th Cir. Sept.17, 1996), attached to Defendant's Memorandum in Support at Tab A(2), motion for publication pending.

**68.** *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 9 (5th Cir.1967).

**69.** I need not address defendant's alternate argument that plaintiffs cannot meet their burden of establishing that defendant had a duty to disclose.

IT IS ORDERED that defendant's motion for summary judgment dismissing the claims of all Louisiana plaintiffs IS GRANTED.