VINTAGE HOMES, INC., Appellant,

v.

Leslie COLDIRON, Appellee.

No. 6808.

Court of Civil Appeals of Texas,
El Paso.

July 25, 1979.

Tom R. Bevill, Breckenridge, for appellant.

Ronald E. Ragsdale, Andrews, for appellee.

## OPINION

WARD, Justice.

This case involves a breach of the implied warranty of merchantability in the sale of a new mobile home. The mobile home was bought from an independent retail dealer, but the only Defendant was the manufacturer. Trial was to the Court sitting without a jury. By its judgment, the trial Court found that there was an implied warranty of merchantability, as the term is defined in Section 2.314 of the Tex.Bus. & Comm.Code Ann., which accompanied the sale; that the home was defectively manufactured and constructed and a breach of the implied warranty had occurred; and awarded the consumer the sum of $5,879.15 as damages for his economic loss. The Court in its judgment determined that this amount represented the difference between the represented value of the mobile home at the date of sale and its actual value. Findings of fact were not requested and except as set out in the judgment were not filed. We affirm.

Leslie Coldiron purchased the mobile home on November 15, 1971, from Permian Pontiac in Midland for the sum of $7,079.15. The unit was built by the Defendant, Vintage Homes, Inc. The dealer transported the unit to Andrews, blocked it up on the purchaser's lot and hooked up the sewer. The purchaser and his wife hooked up the other utilities. Within a period of six months, the Coldirons experienced trouble with the unit when the lights went out; the electric switches burned up; the water lines broke in two places. Thereafter, they replaced the electric breaker box. Next, large holes developed around the windows and doors and holes appeared in the roof and at one end of the unit. These problems permitted water and blowing sand to enter. Finally, the walls fell out in the hallway; the kitchen cabinets pulled out from the ceiling; and they discovered that the insulation was inadequate. Within the first year after the sale, Permian Pontiac attempted some of the electrical and plumbing repairs. At one time, after the buyer complained to the dealer, a repairman from Vintage Homes inspected the unit and worked on the roof where he installed some "rumble bars," but could do nothing about the doors and windows. After the first year, the buyer made or paid for his own repairs but, when the walls and roof started buckling and the sand from the blowing wind got worse, he decided to contact an attorney. His suit was filed in October, 1975. From the time of the purchase of the unit to the time of trial, the Plaintiff and his family lived in the unit.

Mr. Rogers was called by Coldiron and, after qualifying as an expert on valuations and repairs to mobile homes, verified the defects, stated that the defects were caused by manufacture and not by wear and tear, and that the fair market value of the home as a new unit was between $1200.00 and $1500.00.

The defense consisted of an expert testifying that he examined the unit in 1976; that he found the insulation adequate; and that the damages to the unit amounted to only $1200.00 to $1500.00. He stated that in his opinion the damages were caused by improper leveling of the mobile home. This latter testimony regarding leveling was rebutted by Coldiron who maintained that the house was properly leveled at all times.

The Appellant's first point attacks the sufficiency of the evidence supporting the trial Court's finding contained in the judgment that at the date of sale the mobile home would not pass without objection in trade under the contract description and that the same was not fit for the ordinary purpose for which the goods were used. We will limit our remarks to the breach of the implied warranty of merchantability where the goods are unfit for the purposes for which the goods are ordinarily used. Tex.Bus. & Comm.Code Ann. sec. 2.314(b)(3). In this sale, the implied war-

ranty was that the mobile home was to be fit for residential use. *Davis v. Vintage Enterprises, Inc.,* 23 N.C.App. 581, 209 S.E.2d 824 (1974). The defects used to show the breach of the warranty had to be in existence at the time of sale or be inherent in the article sold. *Ford Motor Company v. Tidwell,* 563 S.W.2d 831 (Tex.Civ.App. —El Paso 1978, writ ref'd n. r. e.). The Appellee testified to some fifteen separate defects, and those permitting the elements to enter into the trailer were certainly of a serious nature. His expert who testified gave his opinion that they were all due to the poor manner of manufacture and not to wear and tear. Appellant's expert agreed that all of the defects were present except the poor condition of insulation. He blamed the conditions on poor leveling and this condition was denied by the Appellee. The fact that the mobile home was accepted and thereafter used by the Coldirons might be a matter to be considered in the Appellant's favor, but that was not fatal to the claim as made. The claim for damages was for breach of warranty and was not waived by the buyer's acceptance and use of the mobile home. Section 2.607, Tex.Bus. & Comm.Code Ann.; *Melody Home Manufacturing Company v. Morrison,* 502 S.W.2d 196 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.). We have examined the whole record and find that it adequately supports the trial Court's finding that the mobile home was unfit for residential use. The first point is overruled.

■ Appellant's second point is to the effect that there was insufficient evidence to negate the possibility that intermediate acts or agencies caused or contributed to the defects. As previously pointed out, the Appellee's expert witness testified that the problems complained about were definitely due to the way the trailer was manufactured. The evidence was sufficient to negate all intervening causes and the Appellant's second point is overruled.

■ Appellant next complains that there was no evidence that the Appellant ever represented that the mobile home was worth $7,079.15 since all of the Coldirons'

dealings were with Permian Pontiac. Tex. Bus. & Comm.Code Ann. sec. 2.714 provides that where the buyer has accepted goods and given notification he may recover as damages for the breach of warranty the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. It is now established that the manufacturer can be responsible without regard to privity for the economic loss which results from his breach of the Uniform Commercial Code implied warranty of merchantability. *Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Tex.1977). Contract price or the value of goods as represented need not come directly from the manufacturer or its personal agent. To hold otherwise would do violence to the Nobility holding. In that case, the Supreme Court in effect approved the measure of damages which was based on the retail dealer's selling price. The point is overruled.

■ The measure of damages provided for in Section 2.714 where the buyer has accepted the goods is expressly conditioned that the buyer has given notification as provided in subsection (c) of Section 2.607. That subsection provides that the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify *the seller* of breach or be barred from any remedy. The subject of the Appellant's fourth point of error is that contrary to these Code provisions, which require notification, the Coldirons never notified the Appellant/manufacturer as to the alleged breach of the implied covenant of merchantability and therefore were barred from asserting any remedy to which the breach would otherwise give rise. We will overrule the point for the reason that the notice requirement of Section 2.607 applies only as between a buyer and his immediate seller. The matter is referred to in 2 Anderson Uniform Commercial Code (1971) at sec. 2–607:14 as follows:

A person not in privity with the defendant, assuming that he is permitted to sue the defendant, is not barred for hav-

ing failed to give notice to the defendant for the Code only requires that the plaintiff give the notice to 'his seller.' This carries with it the double restriction that the plaintiff be a purchaser and that he have purchased from the defendant. Thus the notice provisions of UCC section 2–607 do not apply to subpurchasers or bystanders.

We also note that the buyer's dissatisfaction was called to the attention of Vintage Homes when its repairman worked on the roof but refused to do anything about the doors and windows. A general expression of dissatisfaction was held sufficient compliance with the statute in *Melody Home Manufacturing Company v. Morrison,* supra. Further, the notice requirements of the Code are to be liberally construed and are not stringent. 2 Anderson 2–607:25–29.

The Appellant's final point complains that the court reporter was not at the time of trial certified as provided by Article 2324b, Tex.Rev.Civ.Stat.Ann. We fail to find where any such complaint or where any proof sustaining such contention was either offered or made in the trial Court. The point is overruled.

The judgment of the trial Court is affirmed.