**In re AIR BAG PRODUCTS LIABILITY LITIGATION.**

**This Document Relates to All Cases.**

**No. Civ.A. MDL 1181.**

United States District Court, E.D. Louisiana.

May 21, 1998.

James Minge (Plaintiff's Lead and Liaison Counsel), James Minge & Associates, New Orleans, LA, Vance R. Andrus, Andrus, Boudreaux, Lemoine & Tonore, P.L.C., Lafayette, LA, Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, LA, Darleen Jacobs, New Orleans, LA, John M. O'Quinn, Richard Laminack, Houston, TX, Dianne M. Nast, Roda & Nast, P.C., Lancaster, PA, Joseph J. McKernan, McKernan, Clegg & Walker, Baton Rouge, LA, Patrick W. Pendley, Plaquemine, LA, Rene R. Barrientos, San Antonio, TX, Joaquin L. Rodriguez, Eagle Pass, TX, Vincent L. Marble, III, Wharton, TX, for Plaintiffs.

David G. Radlauer (Defendants' Liaison Counsel), Thomas A. Casey, Jr., Nan Roberts Eitel, Katy W. Kimball, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Oleans, LA, for Defendants, General Motors Corp., Mossy Motors, Inc., Wickstrom Chevrolet, Inc. and Armadillo Motors, Inc.

Terence M. Murphy, James S. Teater, Chrysta L. Castaneda, Tamara Marinkovic, Jones, Day, Reavis & Pogue, Dallas, TX, for Defendant, General Motors Corp.

John H. Beisner, Brian Anderson, Barton S. Aronson, O'Melveny & Myers, Washington, DC, for Ford Motor Co.

Colvin G. Norwood, Jr., Mark N. Bodin, McGlinchey, Stafford L.L.C., New Orleans, LA, for Ford Motor Co., Chrysler Corp., Spinato Chrysler-Plymouth, Inc. and Bohn Ford, Inc.

Peter W. Herzog, Amy Thompson, Bryan Cave L.L.P., St. Louis, MO, for Chrysler Corp. and Spinato Chrysler-Plymouth.

Robert L. Green, Jr., Charles Loughlin, Howrey & Simon, Washington, DC, for Volvo Cars of North America, Inc.

Henry A. King, Norman S. Anseman, Nesser, King & LeBlanc, New Orleans, LA, for Volvo Cars of North America, Inc. and Bergeron Chrysler-Plymouth, Inc. d/b/a Bergeron Volvo.

Chilton Davis Varner, Dwight J. Davis, Carmen R. Toledo, King & Spalding, Atlanta, GA, for Nissan Motor Corp. in U.S.A.

Terry Christovich Gay, Charles W. Schimidt, III, Christovitch & Kearney, New Orleans, LA, for Nissan Motor Corp. in U.S.A., Bill Watson Nissan, Inc. and Bensco, Inc.

Jerry L. Saporito, Brandt K. Enos, O'Neil, Eichin, Miller, Saporito & Harris, New Orleans, LA, for Toyota Motor Sales, U.S.A., Inc. and Pinnacle Automotive, Inc.

Joel A. Mathias, H. Bruce Dorsey, Piper & Marbury, Baltimore, MD, for Toyota Motor Sales, U.S.A., Inc.

Lawrence J. Duplass, Gregory O. Currier, Duplass, Zwain & Bourgeois, Metairie, LA, for American Honda Motor Co., Inc. and Superior Imports, Inc. d/b/a Superior Honda.

Peter Choharis, Lawrence S. Robbins, Andrew J. Morris, Mayer, Brown & Platt, Washington, DC, for American Honda Motor Co., Inc.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are several motions in these consolidated MDL cases: a Motion to Dismiss by all defendants, a Motion for Partial Summary Judgment by the dealer defendants, and a Motion for Summary Judgment by all defendants in *Frederick Lewis, et al. v. Volvo of North America, et al.*, Civ. No. 97–1309; a Motion to Dismiss and a Motion for Summary Judgment by all defendants in *Theresa Marble v. Chrysler Corp.*, Civ. No. 97–2055; and a Motion to Dismiss by all defendants, a Motion for Summary Judgment by all defendants, and a Motion for Summary Judgment by the dealer defendants in *Eloisa Rodriguez v. General Motors Corp., et al.*, Civ. No. 97–2667. For the reasons that follow, these motions are granted, with the exception of the dealer defendants' Motion for Partial Summary Judgment in *Lewis*, which is denied as moot. Many of the issues these motions raise necessarily duplicate one another, and, for clarity, the Court will repeat them as needed.

### Background

This consolidated multi-district litigation [1] comprises several putative class actions [2] brought on behalf of owners of vehicles equipped with driver or passenger-side air bags. Although the individual allegations of each suit differ, the common charge is essentially the same: the air bags are dangerously defective because they are designed to deploy with sufficient speed and force to seriously injure or kill front seat occupants (although no plaintiff maintains they have done so), especially women, children, the elderly, and short adults. Plaintiffs predicate recovery for this alleged defect on several theories. The *Lewis* plaintiffs [3] assert redhibition claims against defendants [4] under Louisiana law and negligence per se claims under federal transportation laws, 49 U.S.C. § 30118 *et seq.*[5] The *Marble* plaintiffs,[6] in

1. The MDL suits currently before the Court are *Frederick Lewis, et al. v. Volvo of North America, et al.*, Civ. No. 97–1309; *Theresa Marble v. Chrysler Corp.*, Civ. No. 97–2055; and *Eloisa Rodriguez v. General Motors Corp., et al.*, Civ. No. 97–2667.

2. Because determination of the propriety of class certification is premature at this stage, the Court does not address the various contentions plaintiffs advance in their complaints in support of certification.

3. The plaintiffs, and their respective purchases, are Frederick Lewis (purchased Nissan-manufactured vehicle from Benson Nissan, Inc.), Sharon Ford (Honda vehicle from Superior Imports, Inc. d/b/a Superior Honda), James Minge (two Volvo vehicles from Bergeron Plymouth Chrysler; also lead and liaison plaintiffs' counsel), Willy Demetra Bias (Toyota vehicle from Pinnacle Automotive, Inc., d/b/a Toyota of New Orleans), Gail Meyers (Ford vehicle from Bohn Ford, Inc.), Maceo Harris (Chrysler vehicle from Spinato–Chrysler Plymouth, Inc.), Tamala Wise (General Motors vehicle from Mossy Motors, Inc.), and

Daphne Collins (Nissan vehicle from Bill Watson Nissan, Inc.).

4. The manufacturer defendants include Volvo Cars of North America, Inc., General Motors Corp., Ford Motor Corp., Chrysler Corp., Nissan Motor Corp. In U.S.A., Toyota Motor Sales, U.S.A., American Honda Motor Co. The dealer defendants are Bergeron Plymouth Chrysler, Inc., Bohn Ford, Inc., Mossy Motors, Inc., Pinnacle Automotive, Inc., d/b/a Toyota of New Orleans, Superior Imports, Inc., d/b/a Superior Honda, Benson Nissan, Inc., Spinato–Chrysler–Plymouth, Inc., and Bill Watson Nissan, Inc.

5. Defendants' motions to dismiss and for summary judgment infer from plaintiffs' Restated, Amending and Supplemental complaint that plaintiffs press claims under the Louisiana Products Liability Act. Given plaintiffs' statement in their opposition to these motions that they do not assert such claims, the Court omits mention of them here.

6. These include Theresa Marble, Robert Johnson, Lou Daisy Scott, and Harry Stovall, all of whom purchased Chrysler minivans.

turn, bring redhibition claims against Chrysler Corporation under Louisiana law, and negligence per se, strict liability, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability claims under Texas law. Finally, the *Rodriguez* plaintiffs [7] advance negligence, negligence per se, and breach of implied warranty of merchantability claims against defendants [8] under Texas law.

Notwithstanding their varying theories for recovery, the many plaintiffs seek similar relief: (1) for the Louisiana plaintiffs in *Lewis* and *Marble*, rescission of the sale and restitution of the purchase price, or the appropriate reduction and return of the purchase price; (2) for all plaintiffs, the cost of retrofitting their vehicles with air bags, sensors and electronic components which will eliminate or significantly reduce unnecessary danger to front-seat occupants while protecting those occupants during collisions; (3) compensation for the diminution of the resale value of their vehicles; (4) compensation for the diminution of their vehicles' usefulness and convenience during the term of ownership, resulting from the inadvisability of allowing the at-risk groups mentioned to occupy either of the front seats; (5) compensation for the difference between what plaintiffs actually paid for their vehicles and the fair market value of those vehicles, taking into account the alleged defect; (6) for those plaintiffs permitted to do so under National Highway Traffic Safety Administration regulations, the cost of hiring a manufacturer, distributor, dealer or motor vehicle repair business to furnish and install an air bag "shut-off" or "on-off" switch; (7) in the event that any plaintiff elects to disconnect the air bags without hiring a professional third party, a refund of that portion of the purchase price attributable to air bags and their related sensors and electronics; (8) for those plaintiffs who elect to install the "shut-off" or "on-off" switches without professional third-party assistance, the cost of parts and reasonable compensation for time and inconvenience; and (9) attorney's fees, costs, legal interest, and all other available general and equitable relief.[9] Defendants deny that the air bags are defective in law, and have filed motions to dismiss or for summary judgment in each case.

## Law and Application

### I. *Standards of Review*

#### A. *Standard for Motions for Summary Judgment*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

7. Eloisa Rodriguez, Isamari Villareal, Gloria Rodriguez, Johnny Martinez, Rolando Charles, and Alicia Charles, all of whom purchased General Motors vehicles from either the Armadillo Motor Co., Inc. or the Wickstrom Chevrolet Co., Inc.

8. The defendants are manufacturer General Motors Corp. and dealers Armadillo Motor Co., Inc. and Wickstrom Chevrolet Co., Inc.

9. Additionally, the plaintiffs in *Lewis* seek specific performance against the defendant manufac-

turers and dealers ordering them to install at their expense sensors "which would enhance and improve the performance of air bags such as to return to petitioners the value for which they are paid." They also demand the statutory remedy for manufacturers' failure to notify purchasers of a defect under 49 U.S.C. § 30120(a)— repair of the vehicle, replacement with a reasonably equivalent non-defective vehicle, or refund of the purchase price plus a reasonable amount for depreciation, with choice left to the manufacturer defendant.

In addition, if the party opposing the motion fails to establish an essential element of his case, summary judgment is proper. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the summary judgment motion, a court must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### B. *Standard for Motions to Dismiss*

To prevail on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a defendant must show that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991). The Court "must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez– Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* The Court now turns to each of the cases.

### II. *Frederick Lewis, et al. v. Volvo of North America, et al.,* Civ. No. 97–1309 F(3)

### A. *Motion for Summary Judgment By All Defendants*

All *Lewis* defendants move for summary judgment on plaintiffs' redhibition claims. First, they contend that each of the cars purchased by the plaintiffs contained a written label, placed prominently on the sun visors by the manufacturers, disclosing potential dangers associated with air bag deployment and directing purchasers to read the owner's manual for further information. The manuals, in turn, afforded more information and warnings about air bag safety. Further, by the time each of the plaintiffs made their purchase, national and local print and broadcast media had publicized extensively what plaintiffs characterize here as latent defects. The combination of sun visor, owner's manual, and media information, the argument goes, renders the air bags' alleged defect "apparent" at the time of sale and, therefore, not redhibitory. Finally, defendants maintain that those plaintiffs who discovered the alleged defect over one year prior to suit are time-barred from pressing redhibition claims past the one year prescriptive period.

Plaintiffs respond with several arguments. With respect to the adequacy of cautionary instructions, they contend that each sun visor and owner's manual conveyed merely general information, not a warning of risks to the short, the elderly, the infirm, or children too old to sit in rear-facing infant seats. The reasonably prudent buyer, they urge, having reviewed the information, would still not be adequately advised about potential danger to these at-risk groups. Plaintiffs point out that defendants' reliance upon media publications ignores "their own countervailing tactics of reassuring the motoring public of [air bags'] safe operation." These publications, the plaintiffs feel, also do not denigrate the fact that defendants were in a superior position to warn consumers of air bags' hazards; whatever the media reports, defendants "should have taken it upon themselves to notify each consumer with a warning specifically tailored to the at-risk groups." Plaintiffs also stress that the existence and degree of a redhibitory defect and a buyer's knowledge of that defect at the time of sale infer questions of fact that trump summary judgment. Plaintiffs attack defendants' assertion of prescription by offering a March 1997 study by the Centers for Risk Analysis and Injury Control, which they contend reveals "the public's false perception of air bag safety," despite the media warnings touted by defendants.

The Court is not persuaded that a genuine issue of material fact exists with respect to plaintiffs' redhibition claims. Louisiana law recognizes two types of redhibitory defects: (1) a defect that "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect," in which case the appropriate remedy is rescission of sale; and (2) a defect that, "without rendering the thing totally useless, ... diminishes its usefulness or its value so that it must be presumed that a buyer would

still have bought it but for a lesser price." La.Civ.Code art. 2520. However, a seller "owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." La.Civ.Code art. 2521. As neither side addresses the plaintiffs' actual knowledge of the air bags' defectiveness at the time of sale, the crucial question is whether "the defects complained of by [plaintiffs] are apparent, such that [they] might have discovered them by simple inspection." *Nesbitt v. Dunn,* 672 So.2d 226, 234 (La.App. 2d Cir.1996); *see also In re Ford Motor Co. Bronco II Product Liability Litigation,* 982 F.Supp. 388, 397 (E.D.La.1997) (Sear, J.) ("[T]he central element underlying a claim for redhibition is that the alleged defect is latent, i.e., it could not have been discovered by a reasonably prudent buyer."). Simple inspection "connotes more than casual observance by [the] buyer and requires examination with a view of ascertaining the thing's soundness, but the buyer is not required to examine inner or hidden parts of the thing for the purpose of finding latent defects." *Id., quoting Fruge v. Hancock,* 647 So.2d 488, 492 (La.App. 3d Cir.1994), *writs denied,* 650 So.2d 1181 (La.1995).

■ Focusing on "whether a reasonably prudent buyer acting under similar circumstances would have discovered the . . . problem prior to the act of sale," the Court finds that plaintiffs' redhibition claims cannot be maintained. *Fruge,* 647 So.2d at 492. Plaintiffs' contention that the sun visor warnings were inadequate is weakened and preempted by National Highway Traffic Safety Administration regulations, which prescribe the precise language manufacturers must include on the visor. *See* 49 U.S.C. § 30103(a); 58 Fed. Reg. 46551, 46564 (1993) (outlining the language to be used in each sun visor label). *Cf. Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 524, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (holding claims that cigarette warnings should have included additional information or should have been more clearly stated

preempted by federal mandate). Among other things, the sun visor instructs the reader to wear a seat belt, to not install rearward-facing child seats in the front seat, and to refrain from sitting or leaning unnecessarily close to the air bag. It also directs the reader's attention to the owner's manuals. In short, buyers of the vehicles are alerted that air bags deserve special safety attention.

The owner's manuals contain ample warnings regarding air bags' potential dangers. Although the manuals' content differs according to vehicle make and model,[10] each instructs that occupants must be properly restrained, that child restraints should be placed in the back seat, that the air bag deploys rapidly and passengers should therefore not sit too close to the dashboard, and so on. They are true to the clear sun visor warnings. The manuals also offer specific warnings about the defect alleged here: plaintiff James Minge's 1994 Volvo 850 GLT owner's manual, for instance, recommends "that children who have outgrown child restraint systems sit in the rear seat with the seat belt properly fastened. The safest place in the car for children is in the rear seat. FAILURE TO FOLLOW THESE INSTRUCTIONS CAN RESULT IN INJURY TO THE VEHICLE OCCUPANTS IN AN ACCIDENT." Sharon Ford's 1995 Honda Odyssey manual warns that "[t]o do its job, the [driver's] airbag inflates with considerable force. So, while it can reduce serious injuries and even save your life, the airbag might cause some facial abrasions or other injuries." It also alerts purchasers that the passenger's air bag "is quite large and inflates with considerable force. It can seriously hurt a front seat passenger who is not in the proper position and wearing the seat belt properly." For this reason, "front seat passengers should move the seat as far back as practical and sit well back in the seat." Finally, Gail Meyers' 1996 Ford Contour manual states that "[a]ir bags deploy with great force, faster than the blink of an eye. Front passengers, especially children and

10. As defendants correctly note, the NHTSA has not required specific language to be included in owner's manuals, "believ[ing] that providing manufacturers flexibility in choosing the language will result in more effective messages that are tailored for individual vehicles." 58 Fed. Reg. at 46557.

small adults, must never sit on the front edge of the seat, stand near the glove compartment . . ., or lean over near the air bag cover when the vehicle is moving. All occupants should sit with their backs against the seatback. . . . When possible, put children in the rear seat." The reasonably prudent buyer who got this information from the sun visor (and owner's manual) would have been informed of the potential danger of which plaintiffs now complain.

Confirming this conclusion is the vast array of media coverage about air bags' potential danger. Local newspapers [11] reported, as early as 1992 and up to plaintiffs' purchase of their respective vehicles (from November 1993 to December 1996) that air bags could cause serious injury or death. Salient reports often targeted the specific groups plaintiffs characterize as "at-risk." For instance, a July 23, 1995 Times–Picayune article quotes a transportation research institute's director as saying that "[t]here is reason to think bags are not as protective because the closer you sit to the wheel, the more likely you are to be injured by the bag itself, so this is true for anybody that is short . . . and women, on the whole, are shorter." It also cites an automotive medicine expert's finding that "air bags do pose a hazard, particularly for older women." An October 28, 1995 Times–Picayune article reported that "Children who are not restrained by seat belts can be killed or seriously injured by airbags deployed in car crashes," and that most of the 17 adults who have died because of air bags "were frail, elderly women." Finally, a November 9, 1995 Times–Picayune article details manufacturers' growing exposure to suits by consumers alleging that air bag defects have caused injuries. The chorus of national newspaper articles and network television reports referenced by defendants amplified local coverage of potential air

bag dangers and confirms, at least, plaintiffs' constructive knowledge of risks. Plaintiffs' retort regarding defendants' "countervailing [media] tactics" is neither supported by the evidence nor sufficient to repel defendants' argument that it was unreasonable for plaintiffs to ignore the totality of information about air bags leading up to and at the time of sale. *See Bronco II*, 982 F.Supp. at 397 (granting summary judgment on vehicle owner-plaintiffs' redhibition claims because "sufficient information had been disseminated by defendant (the visor warning sticker and owner's guides) and the media to excite plaintiffs' attention to stability concerns and the rollover problem").

Finally, plaintiffs' submitted study on public misperceptions about air bag safety does not suggest a genuine issue exists with respect to whether defendants disclosed the alleged defect or whether plaintiffs had constructive knowledge of the risks involved with air bags. In fact, it appears to support defendants' position: although a majority of respondents were under the mistaken impression that air bags have saved more children than they have killed, an even larger majority recognized the danger of placing an infant in a rearward-facing restraint in the front seat, and that a driver sitting too close to the steering wheel could be injured or killed by an airbag. At the least, the study suggests that a reasonable buyer would be sufficiently aware of potential dangers associated with air bags.

In sum, a reasonably prudent buyer acting under circumstances similar to plaintiffs' would have, indeed should have, discovered the risks air bags presented prior to sale. Therefore, the claimed air bag flaws are at best apparent defects for which the defendants bear no redhibitory responsibility under Louisiana law. Defendants' Motion for Summary Judgment is granted.[12]

11. These include the New Orleans Times–Picayune and the Baton Rouge Sunday Advocate.

12. This disposition eliminates the need to resolve whether (and which) plaintiffs' claims are prescribed. The Court rejects, finally, plaintiff's suggestion that summary judgment should be denied because certain factual issues may be further developed during discovery. The factual issues plaintiffs generally advert to involve either public information (such as the existence or authenticity of newspaper articles), client information (such as when each plaintiff learned of the allegedly defective nature of the air bags and what investigatory step's were then taken), irrelevancies, or matters in which no genuine issue inheres (plaintiffs' constructive knowledge from media reports, or the adequacy of certain manufacturer warnings). Absent a specific and persuasive argument that additional discovery will

### B. *Motion to Dismiss by All Defendants*

Defendants also move to dismiss plaintiffs' Restated, Amending, and Supplemental Complaint. They argue several points: that plaintiffs' negligence per se claim is precluded by the Louisiana Products Liability Act; that any LPLA claim must itself be dismissed because only economic damages are sought, implied warranty claims are not cognizable, and plaintiffs do not properly allege that the air bags are unreasonably dangerous; and that the complaint does not state a claim for rescission under Louisiana redhibition law. Plaintiffs respond that they do not, nor did they ever, seek relief under the LPLA.[13] Thus, plaintiffs, redhibition and negligence per se claims presumptively survive. Further, plaintiffs argue that the air bags' dangerous defectiveness supports a claim for redhibition.

 The Court finds that plaintiffs have not stated a claim upon which relief can be granted. This determination inevitably follows plaintiffs' unequivocal statement that they press no claims under the Louisiana Products Liability Act.[14] The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La.Rev.Stat. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir.1995). It defines "damage" to include "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that [Louisiana's redhibition law] does not allow recovery for such damage or economic loss." La.Rev.Stat. § 9:2800.53(5). These parameters dictate that "if the claimant cannot assert a redhibition claim to recover product damage, he must bring his tort claim within the LPLA." *In re Ford Motor Co. Vehicle Paint Litigation*, 1996 WL 426548 at *15 (E.D.La.) (Vance, J.); *see also Vincent v. Timesh, Inc.*, 1998 WL 231036 (E.D.La. May 7, 1998) (Lemelle, J.) (When economic loss damages "are not recoverable in redhibition, they may be sought against the manufacturer under the LPLA, which of course contains the exclusive theories of recovery against the manufacturer."). Given the Court's conclusion that defendants are entitled to judgment as a matter of law on plaintiffs' redhibition claims, and plaintiffs' concession that they bring no LPLA claims, it follows that any and all remaining claims must be dismissed, and that defendants' Motion to Dismiss must be granted.[15]

### III. *Theresa Marble, et al. v. Chrysler Corp.*, Civ. No. 97–2055

#### A. *Motion for Summary Judgment*

Chrysler moves for summary judgment on plaintiffs' Louisiana redhibition claims and Texas implied warranty of merchantability claims. Invoking the same arguments made and evidence offered by defendants in *Lewis*, Chrysler contends that information available from each vehicle's sun visor, the owner's manual, and the intense media scrutiny sufficiently warned plaintiffs of the dangers associated with air bags. Because plaintiffs could have discovered this apparent, non-latent defect with reasonable effort, Chrysler seeks dismissal of the redhibition and implied war-

---

yield *material* bounty, the Court finds it inappropriate to forestall disposition of this motion. *See Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995) (holding that "simple request for additional time to compose additional discovery is not sufficient to meet the burden of articulating specific facts establishing a genuine dispute for trial"); *Martin v. Ford Motor Co.*, 914 F.Supp. 1449, 1456 (S.D.Tex.1996) ("Throughout their Brief, Plaintiffs complain that further discovery is needed to formulate an adequate response to the instant Motions. Such a request, however, cannot defeat a motion for summary judgment.").

**13.** Given this concession, the dealer defendants' Motion for Partial Summary Judgment—in which those defendants seek dismissal of what they construe as plaintiffs' LPLA claims because only manufacturers are liable under that Act—is denied as moot.

**14.** In their opposition to the dealer defendants' Motion for Partial Summary Judgment, plaintiffs maintain that they have brought claims only under redhibition, breach of implied warranty of fitness for use, negligence per se under 49 U.S.C. § 30118 *et seq.*, and "other contract-related" theories.

**15.** Given its disposition of plaintiffs' negligence per se and redhibitory claims, the Court need not resolve whether and to what extent the manufacturer and dealer defendants are jointly and solidarily liable.

ranty of merchantability claims. Additionally, Chrysler maintains that the redhibition claims have prescribed because plaintiffs knew or should have known of the alleged defect more than one year before filing suit.

Plaintiffs respond that they did not know and could not have known about the defect prior to sale. The aforementioned warnings were not tailored to at-risk groups: short, elderly or very young passengers. Additionally, several plaintiffs swear in affidavits that they "had no knowledge of the risk of serious injury or death to front seat occupants" from air bag deployment or of the rate or nature of past injuries suffered by passengers in Chrysler vehicles. With respect to media coverage, plaintiffs contend that Chrysler's advertisements disingenuously reassured the public that the minivans were safe family vehicles. They point to a Chrysler advertisement in which a child beyond the appropriate age for seat restraints is seated in the front seat of a parked minivan. They also offer a minivan advertisement informing prospective purchasers that Chrysler manufactured the minivan for "children," and that passengers "are literally surrounded with safety." They conclude that given the defendant's superior position to warn consumers of air bag hazards, the vague, inadequate warnings it adopted render it liable under redhibition and implied warranty laws, respectively.

▇ In addition to the reasons just given by the Court on the defendants' Motion for Summary Judgment in *Lewis*, plaintiffs here simply do not present a question of fact that staves off summary judgment. First, plaintiffs' affidavits are not probative of the central concern under Louisiana and Texas law, which is constructive knowledge of the alleged defect. *See e.g., Bronco II*, 982 F.Supp. at 397 n. 65 (" 'Knowledge,' for the purposes of the redhibitory action, encompasses constructive knowledge."); *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 435 (Tex.1997) ("An implied warranty contrary to the community's common knowledge cannot exist.").

Second, the advertisements plaintiffs highlight (which they do not suggest they read or were influenced by prior to purchase) do not negate the particular warnings divulged especially by the sun visors and the media. *Cf. Bronco II*, 982 F.Supp. at 397 ("That defendant stood by its vehicle and denied the existence of a defect did not stifle or vitiate the information otherwise available to plaintiffs."). Substantively, they also do not suggest that the air bags were safe without qualification. A reasonable buyer would not deduce from Chrysler's ad promotions that the minivans were manufactured solely with children in mind, and that passengers were completely insulated from the risk of air bag deployment. *Cf. In re General Motors Corp. Anti–Lock Brake Products Liability Litigation*, 966 F.Supp. 1525, 1530 (E.D.Mo.1997) (dismissing express warranty claims based on manufacturer advertisements that its vehicles' crash avoidance system was "99 percent more effective," and a driver's benefit one hundred times greater, compared to crash protection systems as relying on puffery); *LensCrafters, Inc. v. Vision World, Inc.*, 931 F.Supp. 1462, 1469 (D.Minn.1996) (holding manufacturer's characterization of contact lens type as 'vastly' superior to other products "nothing more than common marketplace sales talk"); *Hoffman v. A.B. Chance Co.*, 339 F.Supp. 1385, 1387–88 (M.D.Pa.1972) (advertisements representing that brake lock device "offered unprecedented safety" was merely seller's exaggerated opinion); *Mason v. Chrysler Corp.*, 653 So.2d 951, 953–54 (Ala.1995) (holding that Chrysler's national advertising campaign highlighting the quality of vehicle was puffing).

Chrysler's entitlement to judgment as a matter of law on plaintiffs' redhibition and implied warranty of merchantability claims requires that its Motion for Summary Judgment be granted.[16]

### B. *Motion to Dismiss*

Chrysler also moves to dismiss plaintiffs' tort and implied warranty claims under Louisiana and Texas law. The Court considers the two types of claims in turn, and also

---

**16.** Again, this disposition makes consideration of the parties' arguments on prescription unnecessary.

addresses defendant's two additional arguments that plaintiffs' lack of manifest injury and failure to notify Chrysler of the alleged defect bars recovery under Texas law.

### 1. Tort Claims

With respect to plaintiffs' tort claims, Chrysler first maintains that any negligence or strict liability claims under Louisiana law are preempted by the LPLA, which provides "the exclusive theories of liability for manufacturers for damage caused by their products." La.Rev.Stat. § 9:2800.52. Plaintiffs again state that they are pressing only redhibition claims, and seek no relief under the LPLA.

■ Notwithstanding plaintiffs' disavowal of claims other than redhibition, out of an abundance of caution, the Court finds any negligence and strict liability claims are preempted by the LPLA. The LPLA provides the sole statutory model for plaintiffs' tort claims; plaintiffs' concession here, as in *Lewis*, that they advocate only redhibition means they cannot state a tort claim upon which relief can be granted. *See In re Ford Motor Co. Vehicle Paint Litigation*, 1996 WL 426548 at *15 (E.D.La.) (Vance, J.); *Jefferson v. Lead Indus. Ass'n*, 930 F.Supp. 241, 245 (E.D.La.1996) (Vance, J.), *aff'd*, 106 F.3d 1245 (5th Cir.1997) (The LPLA's exclusivity provision dictates that "neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer.").

Defendant next contends that plaintiffs' negligence per se and strict liability claims under Texas law are barred by the economic loss doctrine, which precludes tort recovery for economic loss occasioned by a product's defectiveness.

■ The Court agrees, and the plaintiffs do not dispute beyond conclusory assertion, that the economic loss doctrine forecloses plaintiffs from asserting negligence per se and strict liability as theories of recovery in tort. *See American Eagle Ins. Co. v. United Tech. Corp.*, 48 F.3d 142, 144 (5th Cir.1995) ("Texas does not permit recovery under a negligence theory for economic loss resulting from damage to a defective product.... [S]trict tort liability [also] would not be ap-

plied when economic loss alone is asserted."); *Hininger v. Case Corp.*, 23 F.3d 124, 126 (5th Cir.1994) (reversing that part of district court's judgment allowing plaintiff to recover her lost profits and repair costs from defendant manufacturer under a negligence theory); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991) ("When the only loss or damage is to the subject of the contract, the plaintiff's action is ordinarily on the contract."). Accordingly, plaintiff's tort claims under Louisiana and Texas law must be dismissed.

### 2. Breach of Implied Warranty Claims

Defendant next argues that plaintiffs have not stated a claim under Texas law for breach of either the implied warranty of fitness for a particular purpose or the implied warranty of merchantability. First, defendants assert plaintiffs have not pled that they purchased the vehicles with the air bags to fulfill a particular purpose (and in any case have never identified that purpose), and do not aver that they relied on the seller's judgment in any respect. Attacking the implied warranty of merchantability claims, defendants next contend plaintiffs have not claimed that the alleged defect rendered the minivans unfit for the ordinary purpose of transportation. This is confirmed, they urge, by plaintiffs' continued use of the vehicles and their failure to allege that the minivans were tendered back to the dealer for a return of the purchase price. Finally, plaintiffs' failure to notify Chrysler of the alleged defect and the admitted absence of a manifested injury precludes plaintiffs from stating a claim under either implied warranty theory.

■ The Court finds that plaintiffs have not pled a cognizable claim under Texas law for breach of the implied warranty of fitness for a particular purpose. They simply do not claim in the Restated Petition that "the seller at the time of contracting ha[d] reason to know any particular purpose for which the goods [we]re required," and that the plaintiffs were "relying on the seller's skill or judgment to select or furnish suitable goods"—the mandated elements of an implied warranty claim. *See* Tex. Bus & Com. Code § 2.315; *Sipes v. General Motors*

*Corp.*, 946 S.W.2d 143, 158–59 (Tex.App.1997) (holding that plaintiffs "were acquiring the airbags only for the general purpose for which they are designed. Therefore, they have not contended [that this is] a situation in which a particular purpose would arise and this theory is not a part of this litigation."); *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 121–22 (Tex.App.1996) (affirming trial court's finding that plaintiff failed to produce evidence supporting claim for implied warranty of fitness for particular purpose).

■■■ Similarly lacking is a viable claim for breach of the implied warranty of merchantability. This theory of implied warranty is transgressed under Texas law "if the product was defective when it left the manufacturer's or seller's possession and was unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy." *Sipes*, 946 S.W.2d at 158. As the Court has found in its analysis of Chrysler's motion for summary judgment, plaintiffs' constructive knowledge of the air bags, risks made any alleged defects apparent. Further, plaintiffs have not alleged that a single air bag "functioned improperly under normal use," *id.*, which is a prerequisite for recovery under this theory. *See also In re General Motors Corp. Anti–Lock Brake Products Liability Litigation*, 966 F.Supp. 1525, 1530 (E.D.Mo.1997) (dismissing claims of implied warranty of merchantability claims because "[p]laintiffs do not allege that the defect manifested itself in their vehicles, i.e. they do not explain when, where or how their vehicles exhibited the defects"). Finally, assuming, as the Court must, the truth of plaintiffs' claim that use of the minivans has been made more cumbersome by the alleged air bag defects, this allegation does not suggest that the minivans have not served the ordinary purpose of transportation. *See General Motors Corp. v. Brewer*, 959 S.W.2d 187, 1998 WL 19478 at *1 (Tex. Jan.22, 1998) ("Here, the product merely fails to fulfill the precise expectations of the consumer because

the product is more cumbersome to use than anticipated. A product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like or even as well as it could.").[17] These flaws are fatal to plaintiffs' claims for breach of the implied warranty of merchantability, and defendant's motion to dismiss them is granted.

### 3. Lack of Manifest Injury

■■■ Underscoring the weakness in plaintiffs' Texas tort and implied warranty claims (defendant does not seek to dismiss plaintiffs' remaining Louisiana redhibition claims in its motion) is that plaintiffs have not suffered manifest injury. The close factual and legal parallels of two cases highlights the propriety of dismissal here. In *Martin v. Ford Motor Co.*, 914 F.Supp. 1449 (S.D.Tex.1996), vehicle owners who had not sustained any injuries sued Ford for breach of implied and express warranties, fraud, negligent misrepresentation, and violation of Texas' consumer protection law, contending that the inadequate visor warning, that passengers should use the lap belt as part of a passive two-point restraint system, rendered their vehicles unsafe. The court granted Ford's motion for summary judgment on all claims for plaintiffs' failure to demonstrate any injury, commenting pointedly that the court "refuse[d] to permit a needless drain on the limited resources of the parties and the judiciary by allowing this unmeritorious litigation to proceed any further." *Id.* at 1457. In the *Anti–Lock Brake* case, similarly, the plaintiff vehicle owners explicitly disclaimed in their complaint any intent to seek damages for personal injuries or property damage. 966 F.Supp. at 1529. Rather, they asserted fraud, implied warranty, and statutory consumer protection claims, alleging that the defendants defectively designed and then concealed the defects of anti-lock brake systems. *Id.* at 1537. The court granted defendants' motion

---

**17.** Plaintiffs attempt to distinguish their case from the "cumbersome" cases by arguing that the air bags may cause *serious injury*, which raises its claim beyond the realm of inconvenience. This is also unpersuasive. The *Anti-*

*Lock Brake* case, cited above, similarly involved allegations of dangerous defects; further, the lack of any manifest injury undermines plaintiffs' contention.

to dismiss in part because of plaintiffs' abject "failure to adequately plead damages," and also because plaintiffs had not shown the vehicles to be unfit for the ordinary purpose of transportation. *Id.*, at 1530, 1533.

Plaintiffs seek to distinguish these two cases by asserting that the defect here is a life-threatening condition, whereas the imperfections in *Martin* and *Anti–Lock Brake* involved mere driver or passenger inconvenience. Plaintiffs overlook that the *Anti–Lock Brake* plaintiffs argued the defect increased the then-unrealized risk of deadly accidents, and that the *Martin* plaintiffs maintained the ultimately hollow position that the failure to warn adequately made the vehicles inherently dangerous. More important, plaintiffs disregard the common thread of the cases: that the absence of manifest injury is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved.

#### 4. *Lack of Notice*

Finally, Chrysler contends that plaintiffs cannot recover on the implied warranty claims because they failed to give notice of the alleged defect, as required by Texas law. Plaintiffs counter that Chrysler's knowledge of the alleged defect made notice superfluous, that there has been no showing that an unreasonable amount of time lapsed between plaintiffs' awareness of the defect and the filing of this lawsuit, and that the Texas notification provision is designed to protect, not punish, good faith customers like plaintiffs.

■■■ Plaintiffs' failure to comply with the Texas Business and Commercial Code's notification provision bars any recovery under any theory of implied warranty. The law mandates that where a tender has been accepted, "the buyer *must* within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from *any* remedy." Tex.Bus. & Com.Code § 2.607(c)(1) (emphasis added); *see also Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189–90 (Tex.App.1996) ("Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty."). The statute is clear; its instruction is unequivocal. Where, as here, "there is no room for ordinary minds to differ as to the proper conclusions to be drawn from the evidence" on notice, the issue of notice is a question of law properly resolved in the context of a motion to dismiss. *Carroll Instrum. Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 657 (Tex.App.1984). Plaintiffs' implicit argument that the filing of this lawsuit constituted notice does not satisfy the statutory standard, and precludes plaintiffs' recovery on their implied warranty claims.[18]

#### IV. *Eloisa Rodriguez, et al. v. General Motors Corp. et al.*, Civ. No. 97– 2667 F(3) [19]

#### A. *Motion to Dismiss by All Defendants*

Defendants move to dismiss plaintiffs' complaint for failure to state a claim under Texas law. They first maintain that every claim must be dismissed for lack of a mani-

---

**18.** The Court notes that the issue of whether the notification provision requires buyers to notify manufacturers remains an open question in Texas. *Cf. Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888 (Tex.Civ.App.1979) ("[T]he notice requirement of Section 2.607 applies only as between a buyer and his immediate seller."), *with Wilcox v. Hillcrest Mem. Park of Dallas*, 696 S.W.2d 423, 425 (Tex.App.1985) ("Because [plaintiff] failed to notify [defendant manufacturer] of the alleged defect in the casket within a reasonable time after it was discovered, ... [plaintiff's] breach of warranty action against [manufacturer] was barred as a matter of law."), *aff'd*, 701 S.W.2d 842 (Tex.1986). In affirming *Wilcox*, the Texas Supreme Court noted that a conflict existed between the lower court's interpretation and *Coldiron* with respect to notice due

a manufacturer, but expressly reserved judgment on the question. *Wilcox v. Hillcrest Memorial Park of Dallas*, 701 S.W.2d 842, 843 (Tex.1986). In this case, however, because it is beyond dispute that plaintiffs made no attempt to notify either the manufacturer or the immediate seller, the lack of notice justifies barring recovery.

**19.** Defendants originally submitted a Motion to Dismiss plaintiffs' claims under the Texas Deceptive Trade Practices Act. Plaintiffs note that in their First Amended Complaint they have "deleted any reference to the Texas DTPA and are not asserting any DTPA claims at the present time." Accordingly, defendants' Motion to Dismiss is denied as moot.

fest injury from the air bags. Next, they claim that plaintiffs' negligence and negligence per se claims must be dismissed under the economic loss doctrine and, where appropriate, by the statute of limitations. Finally, they contend that plaintiffs' implied warranty claims must be dismissed because plaintiffs' vehicles are not sufficiently defective to undermine their ordinary purpose of transportation, because plaintiffs' request for lost vehicle resale value cannot form the basis for such a claim, and because plaintiffs failed to afford defendants notice of the alleged defects. The Court addresses each argument.

### 1. Lack of Manifest Injury

The Court agrees that plaintiffs have failed to advance any allegation of manifest injury or defect, both central tenets of their tort and implied warranty claims. As the Fifth Circuit has stated in the tort context, "[w]hile the sale of a defective product creates a potential for liability, the law grants no cause of action for inchoate wrongs. However egregious the legal fault, there is no cause of action for negligence or products liability until there is 'actual loss or damage resulting to the interests of another.' " (*Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1136 (5th Cir.1985), *quoting* Prosser and Keeton on Torts, § 30 at 165 (5th ed.1984)). The same principle applies to claims for breach of the implied warranty of merchantability. *See Martin v. Ford Motor Co.*, 914 F.Supp. 1449, 1457 (S.D.Tex.1996) (granting summary judgment on all claims, including those for breach of implied warranty, due to plaintiffs' failure to demonstrate manifest injury). An important and related rule is that the absence of a manifested defect precludes a cognizable claim. *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99–100 (S.D.N.Y.1997) ("It is well established that '[p]urchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.' "), *quoting. Hubbard v. General Motors Corp.*, 1996 WL 274018 at *3 (S.D.N.Y. May 22, 1996); *Barbarin v. General Motors Corp.*, 1993 WL 765821 at *2 (D.D.C.1993) (court dismissed claims of all plaintiffs whose cars never experienced alleged defect, stating that it "will, of course, not entertain any class claims in which an allegation of actual

product failure is absent"); *Yost v. General Motors Corp.*, 651 F.Supp. 656, 657 (D.N.J. 1986) (Because plaintiff automobile buyer had "not stated that the engine in his vehicle [wa]s defective in any way," he had not stated breach of warranty and fraud claims against the manufacturer for a design defect in the engine.).

Plaintiffs' claims here do not surmount the hurdles set by these rules. Plaintiffs do not dispute that the air bags have not in any way manifested the defect of which they complain. They merely reply that *Microsoft Corp. v. Manning*, 914 S.W.2d 602 (Tex.App. 1995), absolves them of the need to plead or prove manifest injury, and that the *Martin* case, principally relied upon by defendants, involved summary judgment and is therefore unpersuasive.

Noting plaintiffs' silence on the wealth of contrary case law, the Court finds their reliance on *Microsoft* unavailing. There, a putative class of Microsoft software purchasers asserted breach of express and implied warranty, unjust enrichment, and various federal claims. They contended that Microsoft should have corrected a defect in the purchased version of the software by supplying the upgraded version for free. Microsoft responded partly by arguing that the defect had not manifested itself in the form of lost data. The court explicitly distinguished cars from software, reasoning that unlike vehicles, software's indefinite useful life essentially warranted a presumption that the defect "may manifest itself tomorrow." *Id.* at 609. Therefore, if the purchasers "prove that an individual defect exists in all original ... software, it is not necessary for the purchasers to actually suffer a loss of data as a result of that defect for them to suffer damage. They have received less than they bargained for when they acquired the product." *Id.* The Microsoft court, as defendants correctly point out, limited its decision to the unique circumstances presented (namely, computer software defects).

Second, the fact that the *Martin* court disposed of plaintiffs' claim using the mechanism of summary judgment does nothing to denigrate the veracity or applicability of its

manifest injury analysis. As noted above, several courts have dismissed claims for failure to state a claim.

Thus, plaintiffs' failure to demonstrate or, even allege, manifest injury or defect shatters an essential element of all their tort and implied warranty claims. On this ground alone, defendants' motion to dismiss is appropriately granted.

### 2. Negligence and Negligence Per Se Claims

Defendants also contend that plaintiffs' negligence and negligence per se claims should be dismissed under the economic loss doctrine. For the reasons applied to bar the *Marble* plaintiffs, recovery of economic damages under negligence and strict liability theories, the Court agrees that the *Rodriguez* plaintiffs, claims should similarly be dismissed. *See supra* Part III.B.1. of this Order and Reasons; *American Eagle Ins. Co. v. United Tech. Corp.*, 48 F.3d 142, 144 (5th Cir.1995) ("Texas does not permit recovery under a negligence theory for economic loss resulting from damage to a defective product.").[20] Accordingly, the Court need not consider whether plaintiffs' negligence claims are barred by the statute of limitations under Texas law.

### 3. Implied Warranty of Merchantability Claims

■ To state a claim under Texas law for breach of the implied warranty of merchantability, one must establish that a product is defective. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex.1989). A defect "means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." *Id.* To repeat, the ordinary purpose of an automobile is to provide transportation. *See Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir.1989) ("Cars are designed to provide transportation."), *cert. denied*, 495 U.S. 904, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990); *Taterka v. Ford Motor Co.*, 86 Wis.2d 140, 271 N.W.2d 653, 655 (1978) ("The ordinary purpose for which a car is intended is to provide transportation."). And so, the refrain is the same: a vehicle which performs this ordinary function adequately "does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like or even as well as it could." *See General Motors Corp. v. Brewer*, 959 S.W.2d 187, 1998 WL 19478 at *1 (Tex. Jan.22, 1998).

Mindful of these precepts, the Court finds that plaintiffs have not stated a claim for breach of the implied warranty of merchantability. At most, the Rodriguez plaintiffs have asserted only that the air bags' alleged defectiveness makes their use of the vehicles more cumbersome—precisely the claim rejected by the Texas Supreme Court in *Brewer*, 959 S.W.2d 187, 1998 WL 19478 at *1.[21] *See also Carlson*, 883 F.2d at 298 (" '[M]erchantability' clearly does not encompass consumer expectations that a product will hold its value."); *Skelton v. General Motors Corp.*, 500 F.Supp. 1181, 1191 (N.D.Ill.1980) ("The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectations of the buyer."), *rev'd on other grounds*, 660 F.2d 311 (7th Cir.1981). Because defendants are cor-

---

**20.** Plaintiffs make two attempts to repel the economic loss doctrine here. First, they assert an unpersuasive "life threatening defect" exception. The Court finds no other tribunal in accord with plaintiffs' position, and notes one court's rejection of this argument. *See Lee v. General Motors Corp.*, 950 F.Supp. 170, 172 (S.D.Miss.1996) (dismissing plaintiffs' negligence and strict liability claims involving an allegedly life-threatening defect in sport-utility vehicle roofs because when "plaintiffs seek only damages that are economic in nature, the overwhelming weight of authority holds that there can be no recovery in tort in such a case.") Second, plaintiffs contend that Texas this year relaxed the economic loss doctrine in *Formosa Plastics Corp. v. Presidio Eng'rs*

*and Contractors*, 960 S.W.2d 41, 47 (Tex.1998) ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."). However, the case involved fraudulent inducement, a claim implicating a unique tort-contract relation and one not pled by plaintiffs.

**21.** Given that no manifest injury has been shown, plaintiffs' argument that the air bags pose not just inconvenience but lethal risk simply has no persuasive force. .

rect that " 'merchantable' is not a synonym for perfect," plaintiffs' breach of implied warranty of merchantability claims must fall. *See Lancaster Glass Corp. v. Philips ECG, Inc.,* 835 F.2d 652, 661 (6th Cir.1987), *quoting* White and Summers, *Handbook of the Law Under the Uniform Commercial Code* 356 (2d ed.1980).[22]

### B. Motion for Summary Judgment by All Defendants

Essentially duplicating their efforts, defendants also move for summary judgment on plaintiffs' claim for breach of the implied warranty of merchantability. The Court's dismissal of this claim obviates the need for detailed Rule 56 analysis here. However, the Court notes that Texas law removes the implied warranty of merchantability to the extent that plaintiffs examined or had a fair opportunity to examine the vehicles in question. *See* Tex.Bus & Com.Code § 2.316(c)(2) ("[W]hen the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."); *Freeman v. Davis,* 363 S.W.2d 952, 954–55 (Tex.Civ. App.1962) ("[W]here a party purchasing has a fair opportunity of inspecting, and the defects were of such a nature as could have been discovered by him by inspection, then there is no implied warranty of quality or fitness."), *quoting Seby v. Craven Lumber Co.,* 259 S.W. 1093, 1094 (Tex.Civ.App.1924). The detailed vehicle warnings on the visors (and in the manuals), along with widespread media publicity of air bag risks, teach that "sufficient information had been disseminated by defendant … and the media to excite plaintiffs' attention" to any alleged defect in the air bags and discharge the implied warranty of merchantability. *See In re Ford*

*Motor Co. Bronco II Product Liability Litigation,* 982 F.Supp. 388, 397 (E.D.La.1997) (Sear, J.).

### C. Dealer Defendants' Motion for Summary Judgment

Finally, dealer defendants Wickstrom Chevrolet Co. and Armadillo Motor Co., Inc. move for summary judgment on all claims. Armadillo maintains that it disclaimed all liability for breach of the implied warranty of merchantability in the sales contracts signed by plaintiffs.[23] Both defendants next argue that plaintiffs' negligence claims against them must be dismissed because they did not in any respect design the air bag. Plaintiffs respond that defendants did not conspicuously disclaim the warranties as required by law, and that under Texas law a non-manufacturer seller of a product may be held liable regardless of whether it exercised control over a product's defective design.

The Court initially finds it beyond genuine dispute that Armadillo disclaimed the implied warranty of merchantability. To properly disclaim this warranty, "the language must mention merchantability and in case of a writing must be conspicuous." Tex. Bus & Com.Code § 2.316(b). Texas law further provides that "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Here, just above where plaintiffs Eloisa Rodriguez, Gloria Rodriguez, and Isamaru Villareal signed their agreement to the sales contracts with Armadillo, the dealer stated in all-capital letters almost twice as large as the surrounding text, that it "hereby disclaims all warranties, express or implied, including any implied warranties of merchantability." Any reasonable purchaser of Armadillo vehicles ought to have noticed the warranty disclaimer. Ample case law confirms this conclusion. *See,*

**22.** The Court's disposition of this threshold issue renders unnecessary consideration of defendants' claims that loss of resale value may not be recovered in a claim alleging breach of implied warranty of merchantability, and that plaintiffs' failure to afford defendants notice of the alleged defect bars recovery.

**23.** In the dealer defendants' original motion, both Wickstrom and Armadillo contended that

plaintiffs had read and waived the implied warranty by signing the sales contracts, and attached copies of the contracts. As plaintiffs correctly pointed out, neither plaintiff Rolando Charles nor Alicia Charles signed the sales contract proffered by Wickstrom. In their reply, the defendants withdrew their request for dismissal of plaintiffs' implied warranty claims against Wickstrom.

*e.g., Klo–Zik Co. v. General Motors Corp.*, 677 F.Supp. 499, 508 (E.D.Tex.1987) ("[I]t is obvious that the ... implied warranty disclaimer meets the definition of conspicuousness. The disclaimer is in bold face type, all capitals, and on the face of the warranty right above the buyer's signature. Further, the disclaimer mentions the warranty of merchantability."); *cf. Cate v. Dover*, 790 S.W.2d 559, 563 (Tex.1990) (inconspicuous disclaimer was same size font as surrounding text, not in bold or capital letters, and buried within a paragraph entitled "Warranty" that read more like a promotion than a disclaimer).

 The Court next finds the dealer defendants are insulated from liability on plaintiffs' negligent design theory. Contrary to plaintiffs' characterization, the cases they invoke either do not allow them to assert a negligent design claim against these dealers, or allow them to assert negligence or strict liability theories that have not been pled. *See, e.g., Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir.1984) (plaintiff did not even sue seller of allegedly defective product, and court did not mention extending negligence theory of product liability to allow suit against supplier); *Oser v. Wal–Mart Stores, Inc.*, 951 F.Supp. 115, 120 (S.D.Tex.1996) (supplier negligent in products liability case only if (1) it knows or has reason to know the product is likely to be dangerous for the use for which it is supplied, has no reason to believe consumer will realize this condition, and fails to warn consumer adequately; or (2) it fails to exercise reasonable care to make product safe for the use for which it was supplied); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 423 (Tex.1984) (strict products liability case against manufacturer only); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 790 n. 3 (Tex.1967) (same).[24]

For these reasons, defendants' Motion for Summary Judgment is granted with respect to Armadillo only on plaintiffs' claim for breach of the implied warranty of merchantability, and for both Armadillo and Wickstrom

on plaintiffs' claims for negligence and negligence per se.

For the foregoing reasons, the Motion to Dismiss by all defendants and Motion for Summary Judgment by all defendants in *Frederick Lewis, et al. v. Volvo of North America, et al.*, Civ. No. 97–1309, are GRANTED, and the Motion for Partial Summary Judgment by the dealer defendants is DENIED as moot. The Motion for Summary Judgment and Motion to Dismiss in *Theresa Marble v. Chrysler Corp.*, Civ. No. 97–2055, are GRANTED. The Motion to Dismiss by all defendants and Motion for Summary Judgment by all defendants in *Eloisa Rodriguez v. General Motors Corp., et al.*, Civ. No. 97–2667, are GRANTED; the Motion for Summary Judgment by the dealer defendants is GRANTED only with respect to Armadillo Motor Co., Inc. on plaintiffs' claim for breach of the implied warranty of merchantability, and for both Armadillo and Wickstrom Chevrolet Co., Inc. on plaintiffs' claims for negligence and negligence per se.

---

24. With respect to plaintiffs' negligence per se claims, the Court notes that the statute upon which plaintiffs rely, 49 U.S.C. § 30118 *et seq.*, by its terms binds only manufacturers. Thus, the dealer defendants owe plaintiffs no duty under this statute.